## KOEHLER & HINRICHS MERCANTILE COMPANY v. ILLINOIS GLASS COMPANY.[1]

### July 25, 1919.

### No. 21,334.

**Contract — mutual concurrent promises.**

1. Mutual concurrent promises incorporated in a bilateral contract furnish a sufficient consideration for each other.

**Sale — validity recognized by acts of parties.**

2. The parties to an executory contract for the sale of goods may recognize its binding effect by their conduct so that it is no longer open to question on the ground that it lacks mutuality.

**Same — enforcement of option to increase quantity.**

3. If a party holding an option under a contract has bought his option for value paid or absolutely agreed to be paid, he may enforce it. This rule applies to a contract of sale giving to the buyer the privilege of increasing the quantity of goods specified in the contract as much as he may desire during the period covered by the contract.

**Same — contract assignable.**

4. A contract to sell and deliver goods may be assigned by the person to whom the goods are to be delivered, if there is nothing in its terms manifesting the intention of the parties that it shall not be assignable, but the rights arising out of a contract cannot be transferred if they involve a relation of personal confidence conferring rights intended to be exercised only by him in whom confidence is reposed. Under this rule a contract of sale is assignable, if it provides that the seller may require the buyer to pay cash or give satisfactory security before making delivery of the goods.

**Same — assignment — estoppel.**

5. Even though a contract of sale is not assignable, the parties may consent to its assignment or become estopped by their conduct from asserting that it was not assignable.

Action in the district court for Ramsey county to recover $1,993.70 for breach of contract. The answer set up as defenses: (1) That the carloads of flasks ordered by plaintiff were not for resale in the usual

[1] Reported in 173 N. W. 703.

course of business, but at wholesale in the Chicago market for speculation; (2) that plaintiff failed to notify defendant whether it accepted the terms of payment and credit demanded by defendant, the flasks requiring to be specially manufactured with plaintiff's trade-mark and unsalable in the open market without involving defendant in controversy with plaintiff over the use of the latter's trade-mark; (3) that defendant could not fulfil the contract because of strikes and other causes beyond its control, as was well known to plaintiff. The case was tried before Michael, J., who made findings and ordered judgment for the amount demanded. From an order denying its motion to amend the findings and conclusions and for additional findings, or for a new trial, defendant appealed. Affirmed.

*Moore, Oppenheimer & Peterson,* for appellant.

*Edward P. Sanborn,* for respondent.

LEES, C.

This was an action to recover damages for breach of a contract of sale tried by the court without a jury. The findings were in plaintiff's favor and defendant appeals from an order denying a new trial.

· Plaintiff is a dealer at wholesale in glassware, bottles, flasks and other merchandise. Its place of business is at St. Paul. Defendant is a manufacturer of glassware at Alton, Illinois, and has an agency for the sale of its goods at St. Paul. On January 9, 1915, a contract in writing between defendant and the Koehler & Hinrichs Company was executed. By its terms the former agreed to sell, and the latter agreed to buy, on or before December 31, 1916, 12 carloads of Ko-Hi flasks, at a stipulated price, shipments to be made upon specifications furnished by the buyer at least 30 days in advance of the shipping date, the final specifications to be furnished not later than October 1, 1916. Payments were to be made within 30 days after shipment with certain discount privileges. It was provided that, if the financial responsibility of the buyer became impaired or unsatisfactory to the seller, cash in advance of shipment or satisfactory security might be demanded. There was a clause reading as follows:

"It is agreed that under this contract Koehler & Hinrichs Company may have the privilege of increasing quantity as much as they may desire at price shown herein, during the period covered by this contract."

On June 6, 1916, the contract was assigned by Koehler & Hinrichs Company to Koehler & Hinrichs Mercantile Company, the plaintiff in this action. The latter was a corporation organized to succeed to the business of the former and became the owner of all its assets at that time. Prior thereto defendant had furnished and been paid for two carloads of Ko-Hi flasks. Defendant had notice of the transfer to plaintiff as early as July 1, 1916. Between that date and August 25 following, defendant furnished the plaintiff, at various times and upon its orders and specifications, one carload of flasks. They were furnished and paid for in accordance with the terms of the contract. Between August 25 and October 1, 1916, plaintiff furnished specifications and delivered orders to defendant for 13 carloads of flasks and was able and offered to pay for them in cash at the contract price before they were shipped, but defendant refused to furnish any of them. The difference between the contract price of the flasks and their market price when defendant refused to deliver them was $1,993.70. This amount, with interest from January 1, 1917, was awarded to plaintiff.

The questions we are called upon to decide are: (1) Whether the contract was void for want of mutuality either generally or as to the flasks ordered in excess of 12 carloads. (2) Whether the contract was assignable, and, if not, whether defendant is estopped from defending on that ground.

1. The contract contains an agreement by the glass company to sell, and an agreement by the Koehler & Hinrichs Company to buy, a definite quantity of flasks at a stipulated price, payable on a day certain. It provides for delivery of the flasks upon specifications to be furnished by the buyer within a stated time, and it contains the clause we have quoted giving to the buyer the privilege of increasing the quantity of flasks.

As to the 12 carloads, it is quite clear that the promises were not all on one side, for there is an express agreement on the one hand to sell and on the other to buy. Each party could hold the other to the performance of its agreement. The promises were mutual, were made at the same time, and are incorporated in a bilateral contract. Such promises so made are a sufficient consideration for each other. 1 Dunnell, Minn. Dig. § 1758; Ellsworth v. Southern Minnesota Ry. Ex. Co. 31 Minn. 543, 549, 18 N. W. 822; Bayne v. Greiner's Estate, 118 Minn. 350, 136 N. W. 1041; Page, Contracts, § 296.

Furthermore the parties, by their acts after the contract was executed, treated it as one having mutuality of obligation. In March, 1916, the buyer sought to have it canceled. The seller offered to cancel it if paid $500, and used this language in its letter in reply to the request for cancelation: "This contract is certainly a liability of the Koehler & Hinrichs Company in case our factory sees fit to enforce it." Later it wrote that it preferred to furnish the flasks specified in the contract at the contract price and did not wish to cancel it or release the buyer. No further attempt was made to do away with the contract, but, on the contrary, it was acted upon by the delivery to plaintiff in small lots of another carload of flasks. The conduct of the parties amounted to a practical recognition of the binding effect of the contract, insofar as the sale of 12 carloads of flasks was involved, and we decline to hold that it was void for want of mutuality.

The court found that three carloads of flasks were delivered, leaving nine to be delivered if there had been no increase in the quantity definitely specified in the contract. Thirteen carloads more were ordered but not delivered, and damages were awarded for the failure to make delivery of that quantity, the court giving effect to the option clause in the contract. It is confidently asserted in defendant's behalf that this portion of the contract is unilateral and not supported by any consideration. We have examined the authorities cited to sustain this contention, but think it is unnecessary to go beyond our own decisions in disposing of the question.

It has been before the courts on many occasions. There is some diversity of opinion concerning the principles involved and more in their application to specific cases. This court is now definitely committed to the rule that if the party holding an option under a contract has bought his option for value paid or absolutely agreed to be paid, he may enforce it. Staples v. O'Neal, 64 Minn. 27, 65 N. W. 1083; Gregory Co. v. Shapiro, 125 Minn. 81, 145 N. W. 791; Murphy v. Anderson, 128 Minn. 106, 150 N. W. 387; First Nat. Bank of Hastings v. Corp. Securities Co. 128 Minn. 341, 150 N. W. 1084; Scott v. T. W. Stevenson Co. 130 Minn. 151, 153 N. W. 316. The rule has been approved by the United States Circuit Court of Appeals for this circuit. Conley Camera Co. v. Multiscope & Film Co. 216 Fed. 892, 133 C. C. A. 96.

The rule applies to the option given to the buyer in the contract now

under consideration. It was bound to take and pay for 12 carloads of flasks. This obligation furnished the consideration not only for the seller's promise to furnish them, but also for its promise to furnish a greater quantity if ordered by the buyer in accordance with the terms of its option. The fact that some of the flasks were to be shipped to Chicago, presumably for resale at a profit in a territory not theretofore covered by plaintiff, is of no importance. The option gave the buyer "the privilege of increasing quantity as much as they may desire * * * during the period covered by this contract." We find nothing in the language employed indicating that it was the purpose of the parties to limit the quantity the buyer might order to the reasonable necessities of its established trade at St. Paul.

2. The general rule is, that a contract to deliver goods may be assigned by the person to whom the goods are to be delivered, if there is nothing in the terms of the contract which manifests the intention of the parties that it shall not be assignable. Delaware Co. Com'rs v. Diebold Safe & Lock Co. 133 U. S. 473, 10 Sup. Ct. 399, 33 L. ed. 674; Rochester Lantern Co. v. Stiles & P. Press Co. 135 N. Y. 209, 31 N. E. 1018; Northwestern C. & L. Co. v. Byers, 133 Mich. 534, 95 N. W. 529; Arkansas Valley Smelting Co. v. Belden Mining Co. 127 U. S. 379, 8 Sup. Ct. 1308, 32 L. ed. 246.

It is also the rule that everyone has the right to the benefits anticipated from the character, credit and substance of the party with whom he contracts. The rights arising out of the contract cannot be transferred, if they are coupled with liabilities or if they involve a relation of personal confidence, conferring rights intended to be exercised only by him in whom confidence is reposed. Arkansas Valley Smelting Co. v. Belden Mining Co. supra.

Plaintiff contends that this case falls within the scope of the first rule above stated, and defendant, that it falls within the second. If defendant undertook to furnish flasks on the credit of the buyer, there would be no doubt of the validity of its contention. But it had the right to demand cash or satisfactory security before making delivery, and the court found that plaintiff was able and offered and agreed to pay the contract price in cash before shipment was made. It is sought to overcome the force of this finding by calling attention to the fact that in making the flasks a private mould was used and that the mark

"Ko-Hi" was blown in the glass, hence defendant could not resell the flasks to the general trade, without running the risk of infringing upon plaintiff's trade-mark rights. It is said that defendant had no assurance that plaintiff would accept delivery of the flasks after it had gone to the expense of manufacturing them, and that, while it could demand cash before delivery, it could not demand it as a condition precedent to the manufacture of the flasks and might be left with them on its hands with no right to dispose of them. There would be force in this contention, but for the fact that it appears to be an afterthought on defendant's part.

The buyer named in the contract never had any credit with defendant. Nothing was ever furnished to it on any other basis than cash on delivery. After receiving notice of the assignment, Ko-Hi flasks were made and shipped to plaintiff; they were billed to it, and it paid for them. Defendant called plaintiff's attention to the fact that it had not received its financial statement. One was prepared and sent in showing net assets amounting to over $250,000. There was no further question about plaintiff's credit. On the contrary, defendant wrote, saying that plaintiff might "depend upon our filling this order just as soon as we can" and excusing its failure to deliver on the score of labor troubles at its factory. Later on it wrote that some of the flasks had been made and others were being made and added: "We feel reasonably certain that all sizes will be completed within the next three (3) weeks."

These excerpts from defendant's letters had reference to orders other than those which furnish the subject matter of this litigation, but at no time did defendant take the stand that plaintiff had not succeeded to all the rights of its assignor under the contract.

If defendant intended to stand on its alleged right to refuse to fulfil its contract because it never consented to the assignment thereof and never waived its right to rely upon the superior credit of plaintiff's assignor, it effectually concealed its intention in the correspondence and dealings that followed the assignment. We are of the opinion that even if the contract was not assignable, that defense is no longer available and that the learned trial court correctly disposed of the case.

Order affirmed.