In re the Marriage of Steven Walter
PRAHL, Petitioner, Appellant,

v.

Jana Lise–Ulland PRAHL, Respondent.

No. C0–00–1315.

Court of Appeals of Minnesota.

May 29, 2001.

Michael S. Husby, Duluth, for appellant.

Elizabeth A. Storaasli, Lisa D. Wilson, Duluth, for respondent.

Considered and decided by G. BARRY ANDERSON, Presiding Judge, LANSING, and HALBROOKS, Judges.

## OPINION

G. BARRY ANDERSON, Judge

In this dissolution action, appellant contends that the district court abused its discretion by (1) failing to award him spousal maintenance and failing to reserve jurisdiction over the issue of maintenance; (2) valuing and dividing parties' property, including the parties' van, homestead, business, unaccounted-for personal property, and stock shares; and by (3) denying his motion for a new trial. We conclude that the district court's decision that appellant did not currently need spousal maintenance, and its rulings concerning the van, the homestead, the business, the personal property, and the motion for new trial, do not constitute abuses of discretion. We conclude, however, that the district court abused its discretion by awarding all of the Minnesota Power stock shares to respondent as nonmarital property. We also remand for further findings concerning the district court's reservation of jurisdiction over spousal maintenance.

Accordingly, we affirm in part, reverse in part, and remand.

## FACTS

Appellant Steven Walter Prahl and respondent Jana Lise–Ulland Prahl married in 1978. During the marriage, the parties operated an antique shop, Brass Bed Antiques, a business started in 1972 by respondent and her first husband. In addition to working part time at the antique shop, appellant worked full time at a bread company and later as a cook and bartender at a restaurant. In 1983, appellant quit the restaurant job and began working full time at the antique shop, appraising, buying, refinishing, and selling furniture and other antiques. In 1996, doctors diagnosed appellant with Hepatitis C virus and cirrhosis of the liver, but he continued to work at the antique shop on a nearly full-time basis.

Appellant petitioned for dissolution in 1999. Following a dissolution hearing, the district court concluded that neither party was entitled to spousal maintenance and divided the marital property, awarding appellant marital property worth $202,354, including the homestead, and awarding respondent marital property worth $179,741. The district court found some property "missing" and attributed that property to appellant. The district court awarded respondent a premarital interest in the antique business. In addition, the district court awarded respondent, as nonmarital property, shares of Minnesota Power stock. The district court denied appellant's motion for amended findings, conclusions, and new trial. Appellant challenges the judgment and the denial of his motion.

## ISSUES

I. Did the district court abuse its discretion by concluding appellant did not need spousal maintenance and by failing to reserve jurisdiction over the issue of maintenance?

II. Did the district court abuse its discretion in valuing and dividing the marital property?

III. Did the district court abuse its discretion by denying appellant's motion for a new trial?

## ANALYSIS

### I.

■ Appellant claims that the district court abused its discretion by failing to award him spousal maintenance. We will not reverse a district court's determination of a spousal maintenance award absent an abuse of discretion. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982). For this court to rule the district court abused its discretion, the district court must have resolved the question in a manner "that is against logic and the facts on record * * *." *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984) (citation omitted).

■ District courts may grant maintenance to a spouse upon finding the spouse lacks sufficient property to provide for reasonable needs or is unable to provide adequate self-support through employment. Minn.Stat. § 518.552, subd. 1 (2000). Once the district court has determined a party needs maintenance, Minn.Stat. § 518.552, subd. 2 (2000), provides factors for the court to consider in determining the amount and duration of maintenance. *Id.* The issue is, in essence, a balancing of the recipient's need against the obligor's ability to pay. *Erlandson*, 318 N.W.2d at 39–40.

#### A. Entitlement to Maintenance

■ Appellant first argues that the district court erred by finding that he was capable of self-support and by concluding he did not need maintenance. Appellate courts uphold findings of fact unless they are "clearly erroneous." Minn. R. Civ. P.

52.01. A finding is clearly erroneous if the reviewing court is "left with the definite and firm conviction that a mistake has been made." *Gjovik v. Strope*, 401 N.W.2d 664, 667 (Minn.1987). We view evidence in the light most favorable to the district court's findings and defer to district court credibility determinations. *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App.2000). Because the district court, as the factfinder, is charged with reconciling conflicting evidence, the fact "[t]hat the record might support findings other than those made by the [district] court does not show that the court's findings are defective." *Id.* at 474 (citations omitted).

The district court found, despite appellant's illness, that appellant's physician had not restricted his work, appellant had not applied for disability benefits, and appellant had not presented evidence showing his inability to obtain gainful employment. The district court found that appellant had the training and skill to operate an antique business and had the earning capacity to maintain the middle-class standard of living he enjoyed during the marriage.

The record supports these findings. Appellant testified that he was diagnosed with Hepatitis C in 1996. Appellant supported his testimony with medical reports. The reports explain that appellant's medication causes fatigue, and, if his viral infection and liver disease worsens, he may need a liver transplant. Appellant testified that he had "no idea" how he would support himself in the future because he was no longer capable of working a 40–hour per week job due to the side-effects of his medication. The medical reports did not, however, show that appellant's doctors placed limits on his activity.

Respondent testified that despite having joint pain and general weakness beginning in 1996, appellant was able to perform his regular work activities at the antique shop.

According to respondent, there was no real interference with appellant's daily routine, but, after taking his medication, he would sometimes come to work late. Respondent was not aware of any limitations placed on appellant by his physician.

Viewing the evidence in the light most favorable to the findings and deferring to the district court's resolution of conflicting evidence, the findings concerning appellant's earning ability are not clearly erroneous. Because those findings show that appellant did not, at the time of trial, need maintenance, the district court's determination that neither party was entitled to maintenance is not an abuse of discretion.

## B. Lack of Specific Income and Expense Findings

Appellant also claims that the district court erred by failing to make particular findings concerning the parties' incomes and expenses. The district court apparently accepted appellant's claimed monthly need of $2,638 and found that he could meet that need through employment using his antique business skills and through his property award of $202,354.

The findings show that the district court considered appellant's historical income, expenses, vocational skills, ability to support himself, property received, and the middle-class standard of living established during the marriage. These findings are sufficient to show that appellant did not demonstrate a current need for maintenance. *See Currey v. Currey*, 393 N.W.2d 683, 686 (Minn.App.1986) (explaining that adequate findings are those that explain that the relevant statutory conditions have been considered). We may treat statutory factors as addressed when they are implicit in the findings and do so here. *See Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn.1997) (recognizing statutory maintenance factors as "implicit[ly]" addressed).

Having concluded that appellant did not currently need maintenance, the district court was not required to calculate respondent's ability to pay maintenance. *See* Minn.Stat. § 518.552, subd. 1 (requiring an initial determination that party seeking maintenance demonstrates need for maintenance).

## C. Reservation of Maintenance

Appellant next argues that the district court erred by failing to reserve jurisdiction over the issue of spousal maintenance. Reservation allows the court to later assess and address future changes in one party's situation as those changes arise, without prematurely burdening the other party. *Van De Loo v. Van De Loo*, 346 N.W.2d 173, 178 (Minn.App.1984). Whether to reserve jurisdiction over the issue of maintenance is within the district court's discretion. Minn.Stat. § 518.55, subd. 1 (2000).

Appellant presented evidence of medical conditions, Hepatitis C and cirrhosis of the liver, that may, in the future, interfere with his ability to meet his own needs through self-support. Appellant presented evidence that his condition may worsen if it does not respond to medication. Appellant's current ability to support himself, coupled with his medical condition, suggest that appellant may be the type of person for whom maintenance should be reserved. *See Wopata v. Wopata*, 498 N.W.2d 478, 485–86 (Minn.App.1993) (upholding reservation of maintenance where husband was, at dissolution, financially self-sufficient but heart problems made future self-sufficiency uncertain); *Tomscak v. Tomscak*, 352 N.W.2d 464, 466 (Minn.App.1984) (requiring district court to amend decree to include reservation of jurisdiction on maintenance issue where spouse's cancer could recur and make maintenance necessary).

The district court did not make findings that explain why it did not reserve jurisdiction over the issue of maintenance. This failure to make findings is not, alone, sufficient to constitute an abuse of discretion. But the lack of findings, together with evidence of a potentially progressive disease, makes it difficult to review, on appeal, the district court's conclusion that reservation of maintenance was not warranted. *Cf. Stich v. Stich,* 435 N.W.2d 52, 53 (Minn.1989) (proper appellate review is precluded when district court fails to make sufficiently detailed findings). Moreover, additional evidence may have now developed which could significantly affect the question of whether maintenance ought to have been reserved.

Because of the broad discretion given district courts in deciding whether to reserve maintenance, and given the district court's apparent rejection of some of appellant's evidence, we are unwilling to assume the district court abused its discretion here. We remand, however, to allow the district court to address reservation of maintenance in light of the cases addressing reservation in the context of an illness and to make findings explaining its ruling. Whether to reopen the record on remand shall be in the discretion of the district court.

## II.

■■■ Appellant challenges several aspects of the district court's property division. The district court is given broad discretion regarding the division of property in marriage dissolutions and will be reversed only for a clear abuse of discretion. *Crosby v. Crosby,* 587 N.W.2d 292, 296 (Minn.App.1998) (citation omitted), *review denied* (Minn. Feb. 18, 1999). We will affirm a district court's division of property if it has an acceptable basis in fact and principle even though this court may have taken a different approach. *Servin v. Servin,* 345 N.W.2d 754, 758 (Minn. 1984).

### A. 1992 Ford Van

■■■ The district court awarded the parties' 1992 Ford van to appellant. Appellant first argues that the district court erroneously valued the parties' 1992 Ford van at $11,248 because evidence proved that the market value was $4,475. An appellate court will not reverse a district court's valuation of an asset unless it is "clearly erroneous on the record as a whole." *Hertz v. Hertz,* 304 Minn. 144, 145, 229 N.W.2d 42, 44 (1975) (citations omitted). "In valuing an asset for the purposes of marital dissolution, market value of the asset is controlling." *Bateman v. Bateman,* 382 N.W.2d 240, 246 (Minn.App.1986), *review denied* (Minn. Apr. 24, 1986).

The district court found the 1992 Ford van to be worth $11,248, apparently based on an accountant's business valuation of Brass Bed Antiques. The business valuation recognizes the van's "book value of $11,248 at December 31, 1998," which represented an 84% business use, depreciated since its original 1992 purchase. But the accountant's valuation states that, without knowing mileage and condition, "we cannot accurately estimate the value of the van."

As evidence of the market value at the time of dissolution, appellant offered the September 1999 Midwest Edition of the N.A.D.A. Official Used Car Guide. That publication shows the parties' 1992 Ford E–250 Series Cargo van had a trade-in value of, at most, $5,700. The district court received the Guide as an exhibit and, because the market value controls, the district court clearly erred by relying on the accountant's depreciated business value of the van instead of the market value.

■ This error, however, does not produce an inequitable property award. Although the overvaluation of the van awarded to appellant may be as great as $6,773, the district court awarded appellant marital property worth $202,354, and awarded respondent property worth $179,741. In the context of the entire property award, the district court's erroneous valuation of the van does not render the property distribution an abuse of discretion. *See* Minn.Stat. § 518.58, subd. 1 (2000) (requiring a "just and equitable division of the marital property").

## B. Respondent's Premarital Interest in Brass Bed Antiques

■ Appellant next argues that the record does not support the district court's finding that respondent had a $15,000 premarital interest in the antique business. "Whether property is marital or nonmarital is a question of law, but a reviewing court must defer to the [district] court's underlying findings of fact." *Olsen v. Olsen,* 562 N.W.2d 797, 800 (Minn.1997) (citations omitted).

■ A party seeking to establish that property is nonmarital must do so by a preponderance of the evidence. *Swick v. Swick,* 467 N.W.2d 328, 330 (Minn.App. 1991), *review denied* (Minn. May 16, 1991). Property acquired before the marriage is nonmarital. Minn.Stat. § 518.54, subd. 5 (2000). "When nonmarital and marital property are commingled, the nonmarital asset may lose that status unless the party can trace it to a nonmarital source." *Swick,* 467 N.W.2d at 330 (citation omitted).

The district court found that at the time of respondent's 1978 dissolution and at the time of her marriage to appellant, Brass Bed Antiques had a value of $15,000, including all inventory, and found that sum to be respondent's nonmarital interest in the business. The record supports these findings of fact. Respondent's former husband testified that the value of the business in 1977 was between $13,000 and $15,000, and identified a number of items from current inventory that he knew were part of the shop inventory in 1977. Respondent corroborated that testimony and presented a list of items she knew to be part of the 1978 inventory. The current inventory is now worth $138,519. Accordingly, we conclude that the district court did not err by finding respondent proved, by a preponderance of the evidence, a $15,000 nonmarital interest in Brass Bed Antiques.

## C. Respondent's Nonmarital Interest in the Homestead

■ Appellant argues that respondent did not prove her claim to a nonmarital interest in the parties' homestead. The district court found that respondent sold stock valued at $6,000 on June 20, 1979, which, according to her testimony, she applied as the down payment on the parties' purchase of their $34,500 home. But the homestead mortgage dated April 24, 1979, shows the parties borrowed $24,000 and purchased the home nearly two months *before* respondent sold the stock. Appellant testified that the down payment may have come from gifts; respondent disagreed.

■ Because the documentary evidence does not support respondent's contention that the $6,000 stock proceeds were applied to the mortgage down payment, respondent failed to prove, by a preponderance of the evidence, that she had a nonmarital interest in the homestead. But the district court, which recognized respondent's nonmarital interest, nevertheless awarded appellant the entire homestead, and appellant was not required to make an equalization payment. Accord-

ingly, any error concerning respondent's claimed nonmarital interest is harmless because it did not adversely affect appellant's share of the property award. *See* Minn. R. Civ. P. 61 (harmless error ignored).

*D. Minnesota Power Stock*

■ The district court awarded respondent shares of Minnesota Power stock acquired before the marriage and held in her name. Through dividend reinvestment and stock splits, the number of the shares grew from 150 to approximately 2,055 shares. Appellant argues that respondent did not meet her burden of proving her nonmarital claim to all of the Minnesota Power stock shares.

■ The passive appreciation in the value of nonmarital property is nonmarital in nature. *White v. White*, 521 N.W.2d 874, 878 (Minn.App.1994). A portion of a retirement account, for example, may have a nonmarital component because the investor's role is passive, that is, no investment decisions are made, and neither party may withdraw the funds or otherwise control the investments. *Id.* at 879.

■ But *Swick* explains that income, as opposed to passive appreciation, "becomes and asset 'acquired during the marriage' and, as marital property, is divisible between the parties upon dissolution." 467 N.W.2d at 331. In addition, "assets acquired with income generated by a nonmarital asset are also marital property divisible upon dissolution." *Id.* The supreme court has explained that stock splits are the result of market forces and the corresponding increases in the stock's value remain nonmarital. *Nardini v. Nardini*, 414 N.W.2d 184, 194 (Minn.1987). But a stock "dividend" is a share of profits received by the stockholder. *The American Heritage Dictionary of the English Language* 527 (4th ed.2000). "Reinvestment" is the purchase of additional shares

with those profits. *Id.* at 1472. As an asset acquired with income generated from a nonmarital asset, shares purchased with reinvested dividends become marital property. *Nardini*, 414 N.W.2d at 194.

Respondent testified that stock splits and dividend reinvestment increased the number of Minnesota Power stock shares she owned. Respondent also received, without reinvesting, cash dividends from 75 of the original shares. Respondent explained that she had not added to the stock except "through reinvestment." The stock, a liquid investment, could be sold at any time. The stock was not held as part of a retirement program and there was no evidence in the record that the parties regarded the Minnesota Power stock as a retirement asset. Respondent testified that she could have chosen to cease participating in the dividend reinvestment program. In short, this was a garden-variety equity investment with no long-term expectations and subject to sale at any time.

We believe that respondent's decision to continue reinvesting the dividends during the marriage was an active investment decision, even though it was a decision to refrain from acting. Thus, the shares of Minnesota Power stock acquired through stock splits are nonmarital property. But the additional shares acquired by dividend reinvestment are marital property. Accordingly, the district court erred by finding *all* of the shares to be respondent's nonmarital property, and consequently, awarding all of the shares to respondent constituted an abuse of discretion.

Respondent relies on *Ranik v. Ranik*, 383 N.W.2d 431 (Minn.App.1986), *review denied* (Minn. May 22, 1986), for the proposition that amounts earned on nonmarital funds kept separate throughout the marriage remain nonmarital. *Ranik* is distinguishable. There, this court affirmed a

district court's ruling that interest earned on inheritance funds kept separately from the marital funds remained nonmarital. *Id.* at 435. The interest earned on those nonmarital inheritance funds, however, was not the product of investment decisions made by either party during the marriage. As *Swick, White,* and *Nardini* explain, and as the facts of this case illustrate, even assets kept separate from marital funds may have a marital portion when the acts and choices of a party during marriage affect income the asset produces and that income, in turn, is used to purchase additional assets.

 Respondent also argues that appellant withheld a Minnesota Power stock certificate during the dissolution proceedings. Respondent argues that appellant withdrew claims relating to that stock and that, because she was denied access to the certificate, she was unable to offer the court complete evidence of her nonmarital claim. We reject these arguments. Appellant withdrew only his claim that Chromaline corporation stock was marital. Moreover, respondent, through her account administrators, had access to the transaction records that an expert might have used to calculate the number of shares acquired through stock splits and purchased through dividend reinvestment. Respondent offered two such transaction records—Minnesota Power stock account statements from 1979 and 1999—that were admitted into evidence at trial.

We conclude that the district court erred by determining all of the Minnesota Power stock shares to be respondent's nonmarital property and reverse and remand. On remand, the district court shall re-calculate the portion of the increased value of the Minnesota Power stock to determine the number of marital and nonmarital shares, and shall award appellant an equitable share of any marital interest. Whether to reopen the record on remand to take additional evidence shall be discretionary with the district court.

### E. Missing Personal Property

 Appellant contests, as clearly erroneous, the district court's finding that some marital property listed by respondent was in appellant's possession. Upon separation, respondent moved out of the marital home, taking with her only a few boxes of personal items. Respondent testified that she created a list of what she knew to be the parties' marital property. Appraiser David Monroe used the list when making his estimates and testified that there were some items of furniture and antiques on respondent's list that were not at the homestead. The district court apparently found the testimony credible, and we will not disturb such determinations. *See Sefkow v. Sefkow,* 427 N.W.2d 203, 210 (Minn.1988) (appellate courts defer to district court assessments of credibility). We conclude the district court did not err by relying on respondent's property list and finding the missing items to be in appellant's possession.

### III.

 Appellant argues that the district court abused its discretion by denying his motion for a new trial. In reviewing the denial of a motion for a new trial, we must determine not whether the district court might properly have granted a new trial, but whether it violated clear legal rights or manifestly abused its discretion by refusing to grant a new trial. *Hertz,* 304 Minn. at 146, 229 N.W.2d at 44. In addition, we defer to the district court's broad discretion in deciding whether to grant a new trial because the district court has "the feel of the trial." *Vangsness,* 607 N.W.2d at 472 (citations and quotations omitted). Because appellant's motion al-

leged errors capable of resolution on the existing record or with limited additional evidence, and because appellant does not explain how his "clear legal rights" were violated, we conclude that the district court did not abuse its discretion by denying appellant's motion for new trial.

### DECISION

The district court did not abuse its discretion by (1) concluding appellant was not entitled to spousal maintenance; (2) awarding respondent a nonmarital interest in the antique business; (3) attributing missing property to appellant; or (4) denying appellant's motion for a new trial. The erroneous findings concerning the value of the parties' van and respondent's claimed nonmarital interest in the homestead are harmless in light of the entire property award. But the district court abused its discretion by awarding to respondent, as nonmarital property, all of the Minnesota Power stock shares. Finally, this record compels remand for additional findings on the issue of reservation of jurisdiction over spousal maintenance.

**Affirmed in part, reversed in part, and remanded.**