**In re the Marriage of Sandra Jean KIELLEY, petitioner, Respondent,**

v.

**Donald R. KIELLEY, Appellant.**

No. A03–689.

Court of Appeals of Minnesota.

Feb. 17, 2004.

Mary R. Vasaly, Justin H. Perl, Andre J. Lamere, Maslon, Edelman, Borman & Brand, Minneapolis, MN, for appellant.

Scott R. Timm, Waconia, MN, for respondent.

Considered and decided by TOUSSAINT, Chief Judge, Presiding; LANSING, Judge; and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

On appeal from the denial of his motion to suspend his maintenance obligation, appellant-husband argues that (1) the parties' extrajudicial stipulation to modify spousal maintenance was enforceable and (2) the district court abused its discretion in denying the motion without making particularized findings or permitting the record to be supplemented. By notice of review, respondent-wife argues that the district court abused its discretion in denying her motion for attorney fees, declining to hold appellant in contempt for failing to pay spousal maintenance, and declining to compel discovery. We affirm in part, reverse in part, and remand.

## FACTS

Appellant Donald Kielley and respondent Sandra Kielley dissolved their marriage on April 28, 1992. They had three minor children at the time of the dissolution. The parties stipulated to the entry of a judgment and decree, which imposed a gradually increasing spousal maintenance obligation on appellant through December 31, 2009. Appellant's annual maintenance obligation comprised a lump-sum payment of $8,400 and 12 monthly payments. Appellant retained the right to move to modify maintenance, but agreed that changes in respondent's income could not be used as a basis for modification. The judgment also awarded respondent physical custody of the parties' minor children.

On the date of the dissolution, appellant was employed as the Chief Operating Officer of Wilson Learning Corporation, earning $8,004 per month, plus bonuses. In March 2000, appellant was demoted; he was later forced to resign, effective June 1, 2001. Between June 1, 2001 and May 30, 2002, appellant received, as severance pay, an amount equal to his annual gross salary, plus his minimum bonus payment.

On October 3, 2001, the parties entered a written stipulation purporting to modify the dissolution decree. The parties agreed to eliminate appellant's $8,400 annual maintenance payment, to permanently reduce his monthly maintenance payments from $1,861.55 to $1,361.55, and to set his parenting time with the remaining minor child at 62 days per year. The stipulation stated that the parties had made these

changes because of the death of their oldest son, appellant's loss of employment, and respondent's decision to move with the remaining minor child to Arizona in October 2001.

On November 18, 2002, appellant moved the district court to temporarily suspend spousal maintenance until he gained employment. In support of his motion, appellant submitted affidavits describing his loss of employment and the financial aspects of his separation from his former employer. Respondent then moved to have appellant held in contempt for not paying maintenance as required by the judgment. In her supporting affidavit, she claimed that appellant had "talked [her] into signing the [stipulation]."

At the hearing on appellant's motion to suspend spousal maintenance, appellant's counsel argued that relief should be granted based solely on the precipitous drop in his income, but offered to provide additional evidence, if necessary. Finding that the parties' stipulation was void for lack of consideration, the district court denied appellant's motion, and ordered him to pay respondent $62,915.20—the difference between what he would have paid respondent under the judgment and what he actually paid her under the stipulation. By letter, appellant requested leave to file a motion for reconsideration, which the district court denied. This appeal followed.

## ISSUES

I. Did the district court abuse its discretion in declining to enforce the parties' extrajudicial attempt to modify spousal maintenance?

II. Did the district court abuse its discretion by denying appellant's motion to suspend his spousal maintenance obligation?

III. Did the district court abuse its discretion by denying respondent's motion for attorney fees?

IV. Did the district court abuse its discretion by denying respondent's motion to find appellant in contempt for failing to pay spousal maintenance as required by the judgment?

V. Did the district court abuse its discretion by declining to compel discovery?

## ANALYSIS

### I.

 Appellant argues that the district court abused its discretion by declining to enforce the parties' extrajudicial stipulation to modify his spousal maintenance obligation. Because appellant argues that the stipulation should be effective as of the date the parties entered it, he is essentially arguing that the district court should have retroactively modified the judgment's maintenance provision to conform to the stipulation. The district court has broad discretion in deciding whether to modify a spousal maintenance award. *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984). A district court abuses its discretion when its decision is "against logic and the facts on record." *Prahl v. Prahl,* 627 N.W.2d 698, 702 (Minn.App.2001) (quoting *Rutten,* 347 N.W.2d at 50).

 The general requirements for retroactive modification of maintenance are set out in Minn.Stat. § 518.64, subd. 2(d) (2002). Regarding attempted extrajudicial modifications of an existing judgment, we have stated that "[e]xtrajudicial modifications of dissolution decrees without subsequent judicial approval are not valid[.]" *Tell v. Tell,* 359 N.W.2d 298, 301 (Minn.App.1984). On review, the Minneso-

ta Supreme Court referred to this assertion, stating that it was both "contrary to th[e] encouraged policy" of resolving dissolution matters by stipulation and that the statement was "subject to misinterpretation." *Tell v. Tell,* 383 N.W.2d 678, 682 n. 2 (Minn.1986). The supreme court later repeated its endorsement of resolving dissolution matters by stipulation. *Shirk v. Shirk,* 561 N.W.2d 519, 521–22 (Minn. 1997). This endorsement of stipulated resolution of dissolution matters, however, is less enthusiastic and is given considerably less force in contexts where the stipulation in question may have an impact on a child.[1] *See, e.g., Frauenshuh v. Giese,* 599 N.W.2d 153, 158–59 (Minn.1999) (custody modification); *Moylan v. Moylan,* 384 N.W.2d 859, 865 (Minn.1986) (child support); *Geiger v. Geiger,* 470 N.W.2d 704, 707 (Minn.App. 1991) (presumption that physical custodian may remove a child from Minnesota), *review denied* (Minn. Aug. 1, 1991); *see also Olson v. Olson,* 534 N.W.2d 547, 549 (Minn.1995) (stating, in context of grandparent visitation dispute, that, "[a]s in all matters involving court-established family relationships of children, we begin with reference to our paramount commitment to the best interests of the children. We said a century ago, '[t]he cardinal principle in such matters is to regard the benefit of the infant as paramount * * *' and we have reiterated that premise in many recent cases.") (quoting *Flint v. Flint,* 63 Minn. 187, 189, 65 N.W. 272, 273 (1895)).

To the extent that our opinions in *Heldt v. Heldt,* 394 N.W.2d 535 (Minn.App.1986),

*Diedrich v. Diedrich,* 424 N.W.2d 580 (Minn.App.1988) and *Christenson v. Christenson,* 490 N.W.2d 447 (Minn.App.1992), *review granted* (Minn. Jan. 15, 1993), *appeal dismissed* (Minn. Feb. 16, 1993), are read as contrary to the general rule favoring dissolution stipulations because they include statements that extrajudicial modifications of dissolution judgments are unenforceable until they have been approved by a court, we reject such a broad reading of those cases. *Heldt* affirmed a district court's determination that an extrajudicial agreement involving child support was not enforceable. *Heldt,* 394 N.W.2d at 535. *Diedrich* did not involve minor children, distinguished between stipulations that could affect children and those that do not, and affirmed a district court's decision that an extrajudicial modification of a judgment's maintenance provision was effective before it was adopted by the court, at least to preserve the district court's jurisdiction over the maintenance issue. *Diedrich,* 424 N.W.2d at 583. And *Christenson* predates the Minnesota Supreme Court's statements in *Shirk* that, once a husband and wife enter a dissolution stipulation, they are bound by that stipulation absent consent of the other party or leave of the court to withdraw from it. *Shirk,* 561 N.W.2d at 521–22; *see Toughill v. Toughill,* 609 N.W.2d 634, 639 & n. 1. (Minn. App.2000) (applying *Shirk*). Here, the parties' stipulation involved both appellant's maintenance obligation and his parenting time. Therefore, while *Heldt* and *Diedrich* may suggest according a limited amount of deference to the parties' stipula-

---

1. Although a child of the husband and wife who are dissolving their marriage generally is not a party to the dissolution, the nature of a dissolution allows the child to be bound by the parts of the dissolution judgment that, stipulated or not, resolve the child-related aspects of the dissolution. This atypical result of binding a nonparty weighs heavily in favor of the limitation on deference accorded stipulations that may affect children, as does the fact that the district court, during a child's minority, retains jurisdiction to modify the child-related aspects of a dissolution judgment.

tion because it could affect the child, neither *Heldt, Diedrich,* nor *Christenson* warrants the conclusion that the unconfirmed nature of the stipulation is independently fatal to its enforceability.

■ Dissolution-related stipulations are treated as contracts. *Shirk,* 561 N.W.2d at 521. The district court is "a third party to dissolution actions" and, as a third party, has "dut[ies] to protect the interests of both parties" and "to ensure that the stipulation is fair and reasonable to all." *Karon v. Karon,* 435 N.W.2d 501, 503 (Minn.1989). Thus, because dissolution stipulations are treated as contracts and because the district court must ensure that dissolution stipulations are fair, a dissolution stipulation must be both contractually sound and otherwise fair and reasonable.

■ Here, the parties' stipulation stated that the maintenance modification was because of the death of the parties' oldest son, appellant's loss of employment, and respondent's decision to move, with the remaining minor child, to Arizona in October 2001. While the judgment provided for gradually increasing maintenance payments through December 31, 2009, the stipulation fixed appellant's monthly maintenance obligation at $1,361.55, effective October 2001 to December 31, 2005. The stipulation also eliminated appellant's $8,400 annual maintenance payment retroactively to July 30, 1999, and set appellant's parenting time with the remaining minor child at 62 days each year, "effective with the date of [respondent's] planned move to Arizona." Notwithstanding that the question of consideration was not raised or argued by the parties, the district court held that the stipulation was contractually defective for lack of consider-

ation because respondent did not receive a benefit in exchange for the reduction in maintenance.

■ Whether a stipulation is supported by consideration is a legal question, which we review de novo. *Concordia Coll. Corp. v. Salvation Army,* 470 N.W.2d 542, 546 (Minn.App.1991), *review denied* (Minn. Aug. 2, 1991). "Consideration may consist of either a benefit accruing to a party or a detriment suffered by another party." *C & D Invs. v. Beaudoin,* 364 N.W.2d 850, 853 (Minn.App.1985), *review denied* (Minn. June 14, 1985). The amount of consideration is not relevant as long as some benefit or detriment is established. *Estrada v. Hanson,* 215 Minn. 353, 356, 10 N.W.2d 223, 225–26 (1943).

■ Here, without considering that the adequacy of consideration was not raised in district court, we note that the record suggests that, when the parties' entered their stipulation, at least a reasonable case for modifying appellant's maintenance obligation existed. The maintenance-related portion of the stipulation eliminated the uncertainty of the result inherent in litigating modification of maintenance as well as the certainty of incurring the considerable attorney fees and other costs associated with doing so. Additionally, effective with the move of respondent and the child to Arizona, the stipulation addressed appellant's parenting time, as well as the potentially significant inter-state transportation costs associated with exercising his parenting time, costs for which respondent might have been partially liable. *Cf. Auge v. Auge,* 334 N.W.2d 393, 400 (Minn.1983) (noting district court may apportion visitation costs after physical custodian removes child from Minnesota). Where promises are mutual, made

concurrently, and incorporated into a bilateral contract, such promises are sufficient consideration for each other. *Koehler & Hinrichs Mercantile Co. v. Ill. Glass Co.,* 143 Minn. 344, 346, 173 N.W. 703, 704 (1919). Moreover, we do not examine the adequacy of consideration as long as something of value has passed between the parties. *Beaudoin,* 364 N.W.2d at 853. We, therefore, conclude that the district court erred in ruling that the parties' stipulation was contractually defective for lack of consideration. That the requirements for contractual consideration are satisfied, however, does not necessarily establish that the stipulation in question is fair and reasonable.

Because the district court ruled that the parties' stipulation was contractually defective, it did not address whether the stipulation was otherwise fair and reasonable. Thus, we remand for the district court to do so. When evaluating whether an extrajudicial modification of maintenance is fair and reasonable, the district court should consider and make findings addressing all relevant factors. We note that Minnesota law permits parties to a dissolution to

> expressly preclude or limit modification of maintenance through a stipulation, if the court makes specific findings that the stipulation is fair and equitable, is supported by consideration described in the findings, and that full disclosure of each party's financial circumstances has occurred. The stipulation must be made a part of the judgment and decree.

Minn.Stat. 518.552, subd. 5 (2002). While this provision is explicitly limited to stipulations that preclude or limit the ability to modify maintenance, we are persuaded that some analogous concerns are relevant to determining whether extrajudicial stipu-

lations that actually modify maintenance are "fair and reasonable to all." *Karon,* 435 N.W.2d at 503. Relevant factors would include whether the stipulated maintenance obligation is unfair and unreasonable:

1. To children because it will, directly or indirectly, have an adverse impact on them, either by being of such an amount that it will unnecessarily interfere with a child-support obligation, or for other reasons. *See Sydnes v. Sydnes,* 388 N.W.2d 3, 7 (Minn.App.1986) (stating "[p]arties cannot enter into a stipulation which might not be in the best interests of the child"); *cf. LeTendre v. LeTendre,* 388 N.W.2d 412, 416 (Minn.App.1986) (noting "nonbargainable" nature of child's interest in support and that support is "less subject to restraint by stipulation" than other dissolution questions).

2. To one of the parties because of overreaching, lack of full disclosure of the relevant information, lack of an opportunity to consult with counsel, or for some other reason. *See* Minn.Stat. § 518.552, subd. 5; *Karon,* 435 N.W.2d at 503 (noting district court, as a third party to dissolution actions, "has a duty to protect the interests of both parties"); *Doering v. Doering,* 629 N.W.2d 124, 132 (Minn.App. 2001) (discussing affirmative duty to disclose information that is present for parties to dissolution proceedings), *review denied* (Minn. Sept. 11, 2001).

3. To the state because the stipulated maintenance obligation is in an amount that will unnecessarily require either or both parties, or their children, to seek public assistance. *See Karon,* 435 N.W.2d at 503 (noting district court "stands in place and on behalf of [the state] as a third party ... [and] has a duty

to protect the interests of ... all the citizens of the state to ensure that the stipulation is fair and reasonable to all").

■ 4. To the court because the stipulation will unnecessarily complicate future court proceedings because the parties' incomes and expenses are not adequately addressed, their rights and duties under the stipulation are not reasonably clear, or other reasons. *See Hecker v. Hecker,* 568 N.W.2d 705, 709 (Minn.1997) (noting, in the context of stipulated maintenance, that the stipulation identifies the "baseline circumstances" against which claims of changed circumstances are evaluated).

■ In evaluating whether the stipulation is fair and reasonable, we also note that the district court may accept or reject the terms of a stipulation "in part or *in toto.*" *Karon,* 435 N.W.2d at 503 (emphasis in original). Additionally, "while a district court may reject all or part of a stipulation, generally, it cannot, by judicial fiat, impose conditions on the parties to which they did not stipulate and thereby deprive the parties of their 'day in court.' " *Toughill,* 609 N.W.2d at 638 n. 1. Whether to reopen the record on this question rests within the discretion of the district court.

## II.

■ In denying appellant's motion to suspend his maintenance obligation prospectively, the district court held that appellant "failed to carry his burden of proof establishing that the existing maintenance order is unreasonable and unfair[.]" Appellant argues that the district court abused its discretion because there was a sufficient evidentiary basis for modification of maintenance.

■ The district court has broad discretion in modifying spousal maintenance.

*Rutten,* 347 N.W.2d at 50. Spousal maintenance may be modified if the moving party shows both a substantial change in circumstances and that the change in circumstances makes the original award unreasonable and unfair. Minn.Stat. 518.64, subd. 2(a) (2002); *Hecker,* 568 N.W.2d at 709; *see Wiese v. Wiese,* 295 N.W.2d 371, 372 (Minn.1980) (observing that a modification under Minn.Stat. 518.64, requires a showing of "a substantial change of circumstances from those existing at the time of the dissolution or ... at the time the award was last modified"). "Unreasonable and unfair" are "strong terms which place upon the claimant a burden of proof more than cursory." *Giencke v. Haglund,* 364 N.W.2d 433, 436 (Minn.App.1985).

■ In support of his motion for modification, appellant submitted an affidavit describing his loss of employment and a separation agreement from his former employer. Appellant also testified that his income decreased from $250,000 to about $22,000 a year. While this undoubtedly constitutes a substantial change in appellant's income, and while we are aware that the stipulated judgment states that respondent's income is not a basis for modifying maintenance, we note that appellant presented virtually no evidence regarding other aspects of the parties' financial conditions. Rather, he argued that his loss of employment alone was sufficient to justify modification. The district court disagreed, noting that, "absent any information on the parties' overall financial pictures, the court is unable to determine whether the existing order is unreasonable or unfair." On this record, we agree with the district court's conclusion that it lacked sufficient evidence to order modification. *Dean v. Pelton,* 437 N.W.2d 762, 764 (Minn.App. 1989) (noting that "[s]ince it could not de-

termine the parties' living expenses at the time of dissolution, the trial court had insufficient information to determine whether the needs of the parties had substantially increased or decreased making the terms of the original support order unfair"). Thus, we conclude that the district court did not abuse its discretion by ruling that appellant failed to show that the existing maintenance order is unreasonable and unfair.[2]

### III.

By notice of review, respondent argues that the district court abused its discretion in failing to address her request for need-based attorney fees. The decision to award attorney fees rests almost entirely within the discretion of the district court. *Crosby v. Crosby*, 587 N.W.2d 292, 298 (Minn.App.1998), *review denied* (Feb. 18, 1999); *Zagar v. Zagar*, 396 N.W.2d 98, 102 (Minn.App.1986). An award of need-based attorney fees is appropriate if the fees were incurred in a good faith assertion of rights, the payor has the ability to pay the fees, and the recipient does not. Minn.Stat. § 518.14, subd. 1 (2002). Here, however, the district court noted that respondent provided "no information about her employment now or since the divorce, her income, her assets, her health, [or] her ability to work[.]" In the absence of an adequate basis to award need-based attorney fees, the district court did not abuse its discretion by refusing to award those fees.

### IV.

Respondent also contends that the district court should have held appellant in contempt for failing to pay his maintenance obligation. The district court has broad discretion in determining whether to invoke its contempt powers. *See Mower County Human Servs. v. Swancutt*, 551 N.W.2d 219, 222 (Minn.1996). We will reverse the district courts decision only when it constitutes an abuse of discretion. *Id.* The district court reasoned that it "assumes that with the denial of this motion [appellant] will once again resume payments" and deferred the motion without prejudice for reconsideration upon request. On the record before us, we conclude that the district court's decision was well within its sound discretion.

### V.

Finally, respondent argues that the district court abused its discretion in declining to compel discovery. The district court has "wide discretion" regarding discovery and, absent an abuse of that discretion, its discovery decision will not be altered on appeal. *Shetka v. Kueppers, Kueppers, Von Feldt Salmen*, 454 N.W.2d 916, 921 (Minn.1990). Respondent sought to compel appellant to respond to her discovery requests for disclosure of appellant's income producing assets. While the district court did not explicitly rule on respondent's discovery motion, by denying

---

**2.** Appellant also contends that the district court was required to make particularized findings pursuant to Minn.Stat. § 518.552 (2002). This argument ignores the district court's determination that, because the record lacked evidence of the parties' financial circumstances other than appellant's income, it could not apply the statutory factors to determine whether the parties' existing maintenance award was unreasonable or unfair.

While it is true that, absent a change in circumstances, findings on the other maintenance factors are not needed in a maintenance modification proceeding, it is also true that a party cannot complain about the denial of a motion where the reason for the denial was the party's failure to submit the evidence necessary to address the motion. *Tuthill v. Tuthill*, 399 N.W.2d 230, 232 (Minn.App. 1987).

appellant's motion to modify maintenance, it denied appellant's motion to compel discovery. By affirming that ruling, we have rendered respondent's discovery request unnecessary.

## DECISION

The district court erred in concluding that the parties' stipulation was contractually defective for lack of consideration. Because the district court did not address whether the parties' stipulation was fair and reasonable, we remand. The district court did not abuse its discretion in determining that there was insufficient evidence to grant respondent's motion to modify maintenance nor in declining to award attorney fees, find appellant in contempt, or compel discovery.

**Affirmed in part, reversed in part, and remanded.**

LANSING, Judge, (concurring in part, dissenting in part).

I concur in the majority's determination that the three issues raised by the notice of review should be affirmed. The district court properly denied the motion for contempt, the request for attorneys' fees, and the motion to compel discovery. The motion for contempt was procedurally defective, the request for attorneys' fees was factually unsupported, and the motion to compel discovery was waived.

I also concur in the majority's determination that the district court erred in concluding that the Kielleys' agreement to modify spousal maintenance was contractually defective for lack of consideration. The district court has too narrowly defined consideration and has overlooked forbearance of litigation as adequate consideration for an agreement. *See Cady v. Coleman,* 315 N.W.2d 593, 596 (Minn.1982) (equating forbearance to consideration); *State v. Hart Motor Express,* 270 Minn. 24, 29, 132 N.W.2d 391, 394 (Minn.1964) (holding that forbearance of legal action is adequate consideration for agreement).

I respectfully dissent, however, from the majority's decision to impose a formal multifactor test on postdecree modification agreements. These agreements are not the same as the private agreements that expressly preclude or limit modification of maintenance under Minn.Stat. § 518.552, subd. 5 (2002), and the same degree of formality should not attend them. As the district court observed, there is good reason to avoid precedent that requires parties to a dissolution "every time they want to make some change, [to] have to come back into court and execute waivers of counsel and put something on the record . . . they have to make life work."

Finally, I dissent from the majority's declining to reverse and remand on the issue of spousal-maintenance modification. The district court failed to make particularized findings on the reasons for denying the modification and precluded a determination on the merits by denying an evidentiary hearing or an opportunity to supplement the record. I would reverse and remand on this issue.