*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0281**

In re the Marriage of:

Anita Joan Rakow, petitioner,
Appellant,

vs.

Gary Arnold Rakow, Jr.,
Respondent.

**Filed December 8, 2014
Affirmed
Schellhas, Judge**

Chisago County District Court
File No. 13-FA-12-161

Steven A. Sicheneder, Johnson/Turner, P.A., Forest Lake, Minnesota (for appellant)

Mary A. Pfeifer, Appelhof, Pfeifer & Hart, P.A., Oakdale, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Schellhas, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

In this marital-dissolution dispute, appellant argues that the district court abused its discretion by reserving spousal maintenance without a current award. We affirm.

# FACTS

Appellant Anita Joan Rakow (wife) and respondent Gary Arnold Rakow Jr. (husband) married on August 8, 2001, and separated on November 28, 2011. Wife petitioned for marriage dissolution in the spring of 2012, seeking an award of permanent spousal maintenance.

Both parties were employed outside of the home during the marriage. In June 2007, wife suffered a work-related back injury for which she received a workers' compensation lump-sum settlement of $34,000 after attorney fees and taxes in late 2009. Wife was last employed in August 2012 and began receiving social security disability benefits in November 2012, based on a finding that she had "severe impairments" of "Multi-level Degenerative Disk Disease and Depression," as of May 1, 2012. Wife's disability determination "must be reviewed at least once every 3 years." After a trial, the district court dissolved the parties' marriage, divided their property, and reserved husband's spousal-maintenance obligation to wife, finding that "a reservation of spousal maintenance is appropriate at this time . . . due to [the court's] disproportionate award of personal property and motor vehicle value to [wife], as well as its award of [husband's] Thrift Savings Plan to [wife]."

The court denied wife's posttrial motion for amended findings of fact and conclusions of law, finding, among other things, "no basis to amend the reservation of spousal maintenance to [wife]."

This appeal follows.

**D E C I S I O N**

"The standard of review on appeal from a district court's determination of a maintenance award is whether the district court abused its discretion." *Gales v. Gales*, 553 N.W.2d 416, 418 (Minn. 1996). "[District courts have] broad discretion in deciding whether to award maintenance and before an appellate court determines that there has been a clear abuse of that discretion, it must determine that there must be a clearly erroneous conclusion that is against logic and the facts on record." *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn. 1997). And "[d]istrict courts are vested with broad discretion to determine whether to reserve maintenance." *Haefele v. Haefele*, 621 N.W.2d 758, 766 (Minn. App. 2001), *review denied* (Minn. Feb. 21, 2001).

Spousal maintenance is defined as "an award made in a dissolution . . . proceeding of payments from the future income or earnings of one spouse for the support and maintenance of the other." Minn. Stat. § 518.003, subd. 3a (2012). A district court

> may grant a maintenance order for either spouse if it finds that the spouse seeking maintenance:
>    (a) lacks sufficient property, including marital property apportioned to the spouse, to provide for reasonable needs of the spouse considering the standard of living established during the marriage, especially, but not limited to, a period of training or education, or
>    (b) is unable to provide adequate self-support, after considering the standard of living established during the marriage and all relevant circumstances, through appropriate employment . . . .

Minn. Stat. § 518.552, subd. 1 (2012). "The [maintenance] statute lists eight non-exclusive factors for courts to consider when crafting maintenance orders . . . ." *Lee v. Lee*, 775 N.W.2d 631, 636 (Minn. 2009); *see* Minn. Stat. § 518.552, subd. 2 (2012).

3

"[N]o single statutory factor for determining the type or amount of maintenance is dispositive." *Broms v. Broms*, 353 N.W.2d 135, 138 (Minn. 1984). "[E]ach marital dissolution proceeding is unique and centers upon the individualized facts and circumstances of the parties . . . ." *Dobrin*, 569 N.W.2d at 201. A district court must balance the financial needs of the spouse seeking maintenance and his or her ability to meet those needs against the financial condition of the spouse from whom the maintenance is sought. *See Erlandson v. Erlandson*, 318 N.W.2d 36, 39–40 (Minn. 1982) ("[T]he issue is basically the financial needs of [the spouse seeking maintenance] and [his or] her ability to meet those needs balanced against the financial condition of [the spouse from whom maintenance is sought.]").

Here, the district court heard testimony from wife, her father, husband, his mother, and his friend during the parties' dissolution trial. The court also received 93 exhibits spanning more than 1,000 pages. At the time of trial, wife was being treated for her back condition and planned to move forward with back surgery "in the next couple months." Wife testified that she could supplement her social security income but had not been released by her doctor to work and would have work restrictions—she could work no more than ten hours per week with "no lifting, squatting, bending, twisting" and could not sit or stand for prolonged periods. Wife testified that she had not worked at all since August 2012. The court found that wife "was not a homemaker during the marriage" and further found:

> There was no evidence that any loss of earnings, seniority, retirement benefits, or other employment opportunities were forgone by either party. While the SSA has determined that

4

[wife] is currently disabled (a determination that is to be reviewed at least once every three years), this disability is the result of a work injury and not a result of [wife] choosing to forego earnings, seniority, retirement benefits, or other employment opportunities. Both parties worked throughout the marriage.

As to the parties' standard of living during their marriage, the district court found that

[t]he parties had a reasonable and modest standard of living during the marriage. They acquired a home, motor vehicles, recreational vehicles, and household furnishings as needed. However, to obtain these items of property they did incur mortgage debt, loans, and credit card debt. It appears that they may have lived beyond their means at times during the marriage.

The district court found that wife's monthly income is $1,373 and her reasonable monthly expenses total $3,108. The court recognized that wife "does not have sufficient income to meet her expenses, although the evidence is clear that she can supplement her social security [disability] income with employment." And the court noted that wife's planned "back surgery within a couple months . . . may alleviate some of her pain and her work restrictions may be lessened," and that her employment history includes working with children with disabilities and working as a Store Manager for Dollar General. The district court found that "[f]ollowing the dissolution [husband]'s net monthly income will be $5,108.55 and his reasonable monthly expenses will total $5,146.68. He therefore will not have the ability to meet his needs while also meeting those of [wife]." The court recognized that "[husband]'s future monthly expenses may decrease in some fashion."

The district court's findings reveal that the parties' homestead has a negative net equity of $68,087.14. The court ordered husband to be solely liable for that debt because of his better ability to pay it. The court awarded wife approximately 85% of the personal property and husband 15%, concluding that the division is equitable based on the parties' respective incomes, wife's disability status and work restrictions, and the reservation of spousal maintenance. The court awarded wife $14,575 in motor-vehicle value and awarded no value in motor vehicles to husband. The court awarded wife one-half of the marital portion of husband's pension and husband's entire employment-based Thrift Savings Plan in the amount of $23,375.11. The court specifically awarded the Thrift Savings Plan to wife as a property settlement, not as spousal maintenance, finding that the disproportionate award of the marital asset to wife is equitable due to her current disability status, work restrictions, and income.

Although wife makes conclusory assertions that the district court's "factual findings are not supported by the evidence," she fails to identify a single finding that is unsupported by record evidence. Indeed, wife appears to accept the court's findings but insists that they support a current award of permanent maintenance. Similarly, wife asserts that the court "did not complete an analysis on how the various [statutory] factors provided for a reservation of spousal maintenance" and that the court's "decision is contrary to law." Yet wife acknowledges that "the district court made findings as required" by the maintenance statute; recounts the court's factor-by-factor findings without specific critique; and, by complaining that the court "allowed [husband's

6

inability to meet his own reasonable needs] to be the deciding factor," recognizes that the court weighed its findings against one another in reaching its ultimate conclusion.

In considering wife's arguments, we note that the district court's factual findings are thorough and amply supported by testimony and exhibits in the record. The district court properly and painstakingly applied the statutory factors set forth in Minn. Stat. § 518.552, subd. 1, to the unique facts in this case before concluding that, on balance, a reservation of spousal maintenance—coupled with a property division that overwhelmingly favors wife—is fair and equitable. The court's conclusion is not against logic or the facts on record and therefore is not clearly erroneous.

That a spouse who cannot meet his or her own reasonable needs should not be ordered to pay maintenance is supported by caselaw. *See Peterka v. Peterka*, 675 N.W.2d 353, 358 (Minn. App. 2004) ("A finding of a maintenance obligor's ability to pay maintenance is required to support an award of maintenance." (citing *Stich v. Stich*, 435 N.W.2d 52, 53 (Minn. 1989))); *Larson v. Larson*, 383 N.W.2d 18, 20 (Minn. App. 1986) (stating that "it is not feasible to burden [the husband] with a maintenance obligation at the present time" since "[his] monthly expenses exceed his income by more than $400"); *but see Ganyo v. Engen*, 446 N.W.2d 683, 687 (Minn. App. 1989) ("recogniz[ing] that the evidence indicates [the husband] would need $3174, $201 more than he actually earns, to cover $1745 in personal expenses, maintenance of $900, and debt of $529" but concluding that "trial court's determination that this level of maintenance is appropriate, given all the circumstances of the case, is not an abuse of discretion"); *Justis v. Justis*, 384 N.W.2d 885, 886, 891–92 (Minn. App. 1986) (stating that "[i]t is evident, under the

circumstances, that [the husband]'s income is insufficient to meet the total needs of [the wife], the [five marital] children and himself" but concluding that "trial court did not abuse its discretion in setting maintenance"), *review denied* (Minn. May 29, 1986).

A "[r]eservation [of maintenance] allows the court to later assess and address future changes in one party's situation as those changes arise, without prematurely burdening the other party." *Prahl v. Prahl*, 627 N.W.2d 698, 703 (Minn. App. 2001). Reservation may be particularly appropriate where the circumstances of the spouse seeking maintenance, the spouse from whom maintenance is sought, or both, are likely to change in the foreseeable future. *See, e.g.*, *Fastner v. Fastner*, 427 N.W.2d 691, 700 (Minn. App. 1988) (concluding that "the health problems of both parties compel at least the reservation of maintenance for both parties" so that "the trial court will be in a better position to later assess and address the impact of future changes in the parties' health which affect their ability to support themselves").

In *Larson*, as in this case, the wife appealed the district court's reservation of maintenance without a current award. 383 N.W.2d at 19. The wife was an unemployed mother of two and a full-time student whose only source of income was $524 per month in AFDC benefits, while the husband was employed part time as a letter carrier and also earned some money playing in a band. *Id.* Nevertheless, this court affirmed the district court's reservation of maintenance without a current award, reasoning in part as follows:

> [T]he record shows that [the husband]'s monthly expenses exceed his income by more than $400. Given [the husband]'s present financial situation, it is not feasible to burden him with a maintenance obligation at the present time. Yet, by retaining jurisdiction over the matter, the court will be able to

provide [the wife] with some maintenance if and when [the husband]'s income increases or his expenses decrease. The trial court's determination does not involve any clearly erroneous conclusions that are against logic and the facts on record.

*Id.* at 20–21.

In this case, we conclude that the district court did not abuse its discretion by reserving the issue of husband's spousal-maintenance obligation.

**Affirmed.**