In re the Marriage of **Wilbern Philip TELL, Appellant,**

v.

**Patricia Elizabeth TELL, Respondent.**

No. CX–84–77.

Supreme Court of Minnesota.

March 21, 1986.

---

J. Christopher Cuneo, Minneapolis, for appellant.

Robert R. Alderman, Brainerd, for respondent.

Lawrence O. Olson, St. Paul, for amicus curiae.

SCOTT, Justice.

Wilbern Tell seeks further review of a decision of the Minnesota Court of Appeals. The appeals court affirmed the trial court's judgment, which held Wilbern in contempt of court for failure to pay Patricia Tell child support and which assessed child support arrearages of $2,000. The court, however, reversed that part of the trial court's judgment which held that Patricia had no available source of income to be considered in determining her ability to pay child support under the modified custody order. We affirm in part and reverse in part.

On May 3, 1982, the Crow Wing County Court entered a judgment and decree dissolving the marriage of Wilbern and Patricia Tell. The court awarded custody of the two minor children of the marriage, Aaron, aged 14, and Matthew, aged 12, to Patricia and ordered that Wilbern pay, for the support of the children, the sum of $150 per child per month until each child attains the age of 18 years.

During the summer of 1982, Wilbern and Patricia discussed the court's child visitation arrangement. Aaron's and Matt's input was solicited. Thereafter, Wilbern and Patricia agreed that the children would live with Wilbern, except that on Thursdays and Fridays and on alternating weekends they would stay with Patricia.

Although the children were staying at Wilbern's home more often than at Patricia's, Wilbern continued to pay child support to Patricia, as required in the dissolution decree, through September 1982. In December, Patricia moved to have Wilbern held in contempt of court for his failure to continue making child support payments to her. Wilbern immediately moved to modify the custody decree, requesting that physical and legal custody of the children be awarded to him. He also moved to have any child support arrearages forgiven, and requested that the court order Patricia to pay child support to him.

At a February 2, 1983, hearing the county court requested that a custody evaluation be conducted, and stated:

[T]he custody of the minor children of the parties herein and visitation of those parties shall continue as ordered by the court on May 3, 1982, with the understanding of the parties that respondent [Patricia] shall have said children in her custody on Thursday and Friday of each week and alternate weekends [as the parties had agreed during the summer of 1982] pending a hearing on the question of child custody and child support herein. * * * [P]etitioner [Wilbern] shall continue to have the obligation to pay to respondent the sum of $300.00 per month for the support of the minor children of the parties herein pending the hearing on the questions of child custody and child support herein.

The custody evaluation was completed on April 18, 1983, and a hearing to determine custody and child support was held on July 8, 1983. At that time the parties agreed that physical and legal custody of the children should be changed from Patricia to Wilbern. The parties, however, could not reach a settlement on child support.

After the hearing the county court found:

[I]n September, 1982, petitioner [Wilbern] and respondent [Patricia] agreed that the minor child [sic] of the parties herein could live with petitioner except Thursday and Friday of each week and alternative weekends; that at that time, the parties herein made no agreement on change of legal or physical custody of the children to petitioner other than set

forth herein; that the parties made no agreement on alteration of support payments; and that petitioner neither sought or obtained a court order to alter the custody, visitation or child support payments as set forth in the order of the court entered May 3, 1982.

The court held Wilbern in contempt of court for his failure to pay child support from October, 1982, to the date of the order, September 26, 1983, concluding that "child support payments must be made by a person having such obligation until they are modified or forgiven by the court and such child support payments cannot be modified by agreement or actions of the parties." The court ordered Wilbern to spend 60 days in jail, but stayed the execution of the sentence until December 1, 1983. Wilbern was allowed to purge the contempt order and avoid execution of the sentence by payment of $2,000 to Patricia—the amount of child support the court determined was due to Patricia.[1] The court denied Wilbern's motion to order Patricia to pay child support; however, Wilbern's obligation to pay child support to Patricia was terminated.

Wilbern appealed to the court of appeals. The appellate court first held that the trial court did not err in ordering Wilbern to pay $2,000 in child support arrearages, concluding that "[e]xtra-judicial modifications of dissolution decrees without subsequent judicial approval are not valid." *Tell v. Tell,* 359 N.W.2d 298, 301 (Minn.Ct.App.1984). The court of appeals also affirmed the trial court's finding of contempt against Wilbern for his failure to make child support payments after September, 1982. The court concluded: "The dissolution decree was a lawful judgment of the court entitled to full enforcement until judicially modified. Refusing to comply with the decree constitutes disobedience of a lawful judgment and therefore constitutes contempt." *Id.* at 302 (citation omitted). The court of appeals, however, reversed the trial court's ruling that the monthly $950 payments Pa-

tricia receives as part of the property settlement could not be considered in determining her ability to pay child support. *Id.* at 301.

We granted Wilbern's petition for further review on April 11, 1985, and now discuss (1) whether the trial court abused its discretion in ordering Wilbern to pay child support arrearages; (2) whether the trial court properly held Wilbern in contempt of court for his failure to pay child support; and (3) whether the trial court abused its discretion in excluding Patricia's monthly property settlement payments as a financial resource available to her in determining her ability to pay child support under the modified custody decree.

1. Wilbern contends that the trial court erred in ordering him to pay child support to Patricia for a period in which he had, under the arrangement agreed to by the parties, "de facto custody" of the children. The court of appeals affirmed the action of the trial court, holding that any private modification of dissolution decrees without subsequent judicial approval is "not valid." In reaching this conclusion the appellate court relied on our decision in *Dent v. Casaga,* 296 Minn. 292, 208 N.W.2d 734 (1973).

In *Dent,* a party who was awarded child support in a dissolution decree brought suit against the estate of the party obligated to pay the support. We held that until a modification has been ordered by a court the original dissolution decree is a "final judgment" and entitled to enforcement. 296 Minn. at 296, 208 N.W.2d at 737. The court of appeals concluded that extrajudicial modifications of dissolution decrees cannot be enforceable because under *Dent* the original decree, if not judicially modified, is enforceable. The appellate court therefore reasoned that both the original decree and the private modification thereof cannot be enforced because they necessarily conflict.

---

**1.** Wilbern actually owed Patricia $3,600 in child support; however, the court forgave $1,600 and required Wilbern to pay Patricia $2,000.

The court of appeals need not have determined in this case the status of extrajudicial modifications of dissolution decrees in light of our decision in *Dent.* The trial court found that no such extrajudicial modification of the original decree regarding physical and legal custody occurred. It did recognize that in September, 1982, the parties agreed that "the minor children of the parties herein could live with petitioner except Thursday and Friday of each week and alternative weekends." However, it specifically determined that this agreement did not constitute a change of legal or physical custody of the children. Thus, the original decree was never extrajudicially modified.[2]

Nevertheless, Wilbern contends that he should not be responsible for child support for the period after which he filed a motion with the court requesting that he be awarded physical and legal custody of the children, a motion that the court ultimately granted upon stipulation of the parties. In effect, Wilbern is arguing that the judicial modification of the decree should "relate back" to the date on which his motion to modify the decree was filed with the court. Wilbern relies on a quotation from *Holton v. Holton*, 153 Minn. 346, 190 N.W. 542 (1922), a case cited in *Dent*, which reads, in part: "[S]o long as the judgment is absolute in its terms and remains unmodified, *or at least until an application for modification has been made*, it is final as to installments of alimony which have accrued." *Id.* at 351, 190 N.W. at 544 (emphasis added). Installments of child support, like installments of maintenance, Wilbern argues, should accrue only until a motion to modify the decree is filed with the court, provided the court ultimately grants the modification requested.

The court of appeals rejected this argument and upheld the trial court's computation of child support arrearages, stating that the *Dent* rule allows the full enforcement of dissolution decrees until modification has been ordered. It noted that because the trial court did not order modification until September 28, 1983 (Wilbern's motion to modify was filed on December 3, 1982), Wilbern's child support obligations continued through September, 1983. The appellate court did not discuss the significance of the quotation in *Holton.*

We recognized in *Dent* the right of a party to seek modification of a dissolution decree, but stated that "until such modification has been ordered, the decree is entitled to enforcement as originally entered." 296 Minn. at 296, 208 N.W.2d at 737. Here, Patricia sought to enforce the decree when, on December 3, 1982, she filed a motion with the court which stated, in part, that Wilbern had failed to pay child support for October and November, 1982, and that he had unilaterally extended his custody and visitation rights under the decree. Wilbern immediately moved the court for an order modifying the decree. In considering the motions on February 2, 1983, the trial court specifically ordered Wilbern to continue to pay to Patricia the sum of $300 per month for the support of the children, noting that the custody rights determined by the court in its original decree still existed. When the order modifying the custody arrangement under the original decree was filed on September 26, 1983, the trial court did not give the modification retroactive effect.

The trial court's refusal to relate the modification back to December 3, 1982, was not an abuse of discretion. *Dent* allows the enforcement of child support obligations until the court modifies the decree, and the reference in *Holton* does not support Wilbern's contention that he should not have been required to pay child support

---

2. We therefore need not consider whether Minn.Stat. § 518.18(d) (1984) implicitly recognizes extrajudicial modification of dissolution decrees, as proposed by amicus Family Law Section, Ramsey County Bar Association. Amicus is, of course, correct in suggesting that private agreements between parents with respect to

family living arrangements should be encouraged. Therefore the strong wording of the court of appeals that "[e]xtrajudicial modifications of dissolution decrees without subsequent judicial approval are *not valid*" is subject to misinterpretation and contrary to this encouraged policy (emphasis added).

after his motion to modify was filed with the court in light of the fact that the court ultimately granted the motion. Children must be provided for during the period in which a court considers a motion to modify custody, and, in effect, the retroactive rule would be an incentive for those who are required to make payments under an original decree to discontinue paying child support after filing a motion to modify, in the hope that their motion will be granted and will relate back to the filing date.[3]

■ Moreover, the requirement that Wilbern pay Patricia child support through September of 1983 does not violate any principles of equity. Although the parties agreed in the late summer of 1982 to have the children stay with Wilbern more often than his visitation under the decree required, Patricia was still the parent who had full legal and physical custody of the children. The trial court could reasonably have concluded that support payments to Patricia during this time were still necessary for the maintenance of the homestead as residence for the children and for other fixed expenses associated with having physical and legal custody. *See Hennessy v. Stelton*, 302 Minn. 550, 224 N.W.2d 926 (1974) (trial courts are afforded considerable discretion in child support cases).

We affirm the court of appeals and hold that the trial court properly computed the child support arrearages.

2. Wilbern argues that the trial court improperly held him in contempt of court by failing to follow the contempt procedure enunciated in Minn.Stat. § 518.24 (1984). He claims that the statutory provision requires the trial court to first issue an order to pay the support and then, when the order to pay is not obeyed, to issue a contempt order. Wilbern contends that the trial court issued the order to pay and the order of contempt in the same order on September 26, 1983.

■ Section § 518.24 provides:

In all cases when maintenance or support payments are ordered, the court may require sufficient security to be given for the payment of them according to the terms of the order. Upon neglect or refusal to give security, or upon failure to pay the maintenance or support, the court may sequester the obligor's personal estate and the rents and profits of real estate of the obligor, and appoint a receiver of them. The court may cause the personal estate and the rents and profits of the real estate to be applied according to the terms of the order. *If the obligor has an income from a source sufficient to enable him to pay the maintenance or support and he fails to pay the same, the court shall order him to pay it. If a person or party disobeys the order, he may be punished by the court as for contempt.*

(Emphasis added.) Although section 518.-24 may imply, as Wilbern argues, that an order to pay be issued before an order of contempt is entered, Wilbern fails to recognize that on February 2, 1983, the trial court explicitly ordered him to continue to pay child support, as required in the original dissolution decree, until the court was able to rule on the motions before it. When, on September 26, 1983, the trial court ruled on the motions, it found Wilbern in contempt of court for his failure to make such payments, as ordered on February 2, 1983. Thus, an order to pay was, in effect, issued before an order of contempt was entered. The trial court's action does not violate Minn.Stat. § 518.24.

Wilbern also contends that the trial court's immediate imposition of incarceration is not consistent with our reasoning in *Hopp v. Hopp*, 279 Minn. 170, 156 N.W.2d 212 (1968). In *Hopp*, the trial court, in issuing its contempt order, did not include a finding that the defendant was financially able to comply with the court's original order directing the defendant to pay child support and maintenance. The trial court

---

**3.** We stated in *State ex rel. Southwell v. Chamberland*, 361 N.W.2d 814, 816–17 (Minn.1985): "One basis for this concept is to prevent the child from becoming a pawn in the struggle between the parents. The child should not be affected because one parent violates a decree."

also did not make entirely clear the method by which the defendant could purge himself of the contempt and effect his release from incarceration. We remanded to the trial court for further determination of these essential items.

Unlike the trial court in *Hopp*, the trial court here explicitly stated that Wilbern was financially able to pay $2,000 in child support arrearages. It also specifically noted the method by which Wilbern could purge its contempt order, stating:

> [P]etitioner is in contempt of court for failure to pay child support payments in October, 1982, through the date herein; that as a result of said contempt finding, petitioner is sentenced to spend 60 days in the Crow Wing County Jail; that the execution of said sentence is stayed until December 1, 1983; that petitioner can purge the contempt finding herein and avoid execution of the sentence imposed by payment of $2,000 to respondent for child support payments currently due and owing with said $2,000 paid to respondent before December 1, 1983; that all other back child support payments are forgiven.

We established, in *Hopp*, requirements for the issuance of civil contempt orders. The issuing court must have jurisdiction of the subject matter and person; must clearly define the acts to be performed by a party; must assure that the party directed to perform had notice of the court's order and a reasonable time within which to comply; must have been presented with a complaint by the party adversely affected by the alleged failure of the directed party to comply; and must conduct a hearing after due notice allowing the directed party to either show compliance with the order or why compliance is not possible. After such a hearing, the issuing court must determine formally whether there was a failure to comply and, if so, whether incarceration would reasonably result in compliance. Incarceration is unwarranted if a party is wholly unable to comply. 279 Minn. at 174–75, 156 N.W.2d at 216–17.

■ Each of these requirements was followed by the trial court in this case. The court had jurisdiction to make child support determinations concerning the parties. *See* Minn.Stat. § 518.17, subd. 4 (1984). Wilbern's obligation to pay $150 per month per child was clearly defined in the court's decree of May 3, 1982, and the order of February 2, 1983. Wilbern had notice of this obligation and a reasonable time within which to comply (the contempt order was issued on September 26, 1983, and stayed until December 1, 1983). Patricia moved to have Wilbern held in contempt on December 3, 1982, and the court held two hearings on Patricia's motion, as well as the other motions before it, on February 2, 1983, and on June 8, 1983. Thereafter, the court determined that Wilbern had failed to pay support since September, 1982, and that he was financially able to comply with the support decree. After the contempt order was issued the court granted Wilbern's motion for a rehearing on November 21, 1983, at which Wilbern was once again afforded an opportunity to show compliance with the order or explain the reasons for noncompliance. A final contempt finding was issued on December 5, 1983.

The court of appeals affirmed the trial court's contempt finding, after holding that *Becker v. Becker*, 300 Minn. 512, 217 N.W.2d 849 (1974) did not preclude Wilbern from appealing the finding because he presented an irrevocable letter of credit in the amount of the arrearages, which was approved by the trial court as a supersedeas bond. 359 N.W.2d at 302. In *Becker*, we held that a contempt order for failure to make child support payments that is specifically conditioned on the party's failure to purge the contempt is not a final order and is, therefore, nonappealable. 300 Minn. at 513, 217 N.W.2d at 850. The court of appeals, however, stated:

> To hold the contempt order conditional and therefore non-appealable under *Becker* would be to ignore the purposes of Minn.R.Civ.App.P. 108.01 and the supersedeas bond. We hold that when a supersedeas bond is presented for purposes of appealing a contempt order, and

the bond is approved by the court, the order is final and appealable.

359 N.W.2d at 302. The pertinent part of Rule 108.01 provides:

> An appeal from an order or judgment shall stay proceedings in the trial court and save all rights affected by it if the appellant provides a supersedeas bond in the amount and form which the trial court shall order and approve, in the cases provided in this rule.

In its analysis of *Becker* and Rule 108.01, the court of appeals failed to consider the applicability of Minn.R.Civ.App.P. 103.03. The 1983 comments to that Rule state:

> An order for judgment is not an appealable order. There is a right of appeal only from a judgment or an order enumerated in Rule 103.03. An appeal from any order not specifically included in Rule 103.03 is discretionary, and permission must be sought by petition as provided in Rule 105.

An order for contempt is not enumerated in Rule 103.03 as an appealable order, and *Becker* holds that the order is not a final one. However, Wilbern followed the procedure set out in Minn.R.Civ.App.P. 108.01, subd. 3, for an appeal from a "judgment directing the payment of money." The trial court, on February 2, 1984, approved the amount and form of his supersedeas bond and stayed the proceedings. The court of appeals held, in effect, that providing for a Rule 108 supersedeas bond "transforms" an otherwise nonappealable contempt order into a final and thus appealable order under Rule 103.03(f). There is, however, no support for such a transformation.

■ Nevertheless, Wilbern had a right to an appeal. The court of appeals mistakenly viewed Wilbern's appeal as from an order; however, the record establishes that Wilbern was actually appealing a judgment entered in the trial court—a judgment that included the finding of contempt of court. In its September findings of fact, conclusions of law, and order, the trial court found Wilbern in contempt. This order was duly entered as the court's judgment and decree on September 26, 1983. The execution of the 60-day sentence for the contempt finding, however, was stayed until December 1, 1983, and Wilbern was allowed to purge the contempt finding and avoid the execution of the sentence by paying the $2,000 in child support arrearages by December 1. At this point, the rule in *Becker* was applicable: the contempt finding was not final because Wilbern could purge it. Wilbern did not purge the contempt finding by December 1, but instead moved for amended findings concerning the contempt and child support arrearages. On December 5, 1983, the court denied Wilbern's motion, amending the September findings of fact, conclusions of law, and order only to correct typographical errors. These December findings of fact, conclusions of law, and order were entered as the judgment and decree of the court on December 19, 1983. Wilbern thereafter appealed, filing a supersedeas bond as required under Rule 108.01, subd. 3, for appeals from judgments directing the payment of money—in this case the $2,000 in child support arrearages. The court of appeals viewed the contempt finding as an order and not a judgment, even though the contempt finding could no longer be purged, the stay of execution of the sentence had expired, and the findings were part of a judgment entered in the trial court on December 19.

We hold that Wilbern had a right to appeal the trial court's contempt finding. The contempt finding, however, was proper, and we affirm the court of appeals on this issue.

3. The court of appeals held that the trial court abused its discretion in failing to consider, as a financial resource available for child support, the $950 payments Patricia receives each month as part of the marital property distribution of the dissolution decree. Minn.Stat. § 518.17, subd. 4 provides:

> **Child support.** The court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable or necessary for his support, without regard to marital

misconduct, after considering all relevant factors including:

(a) The financial resources and needs of the child;

(b) The financial resources and needs of the custodial parent;

(c) The standard of living the child would have enjoyed had the marriage not been dissolved;

(d) The physical and emotional condition of the child, and his educational needs; and

(e) The financial resources and needs of the noncustodial parent.

Although "financial resources" is not defined in the statute, it can only be reasonably construed to include any distribution of marital property to a spouse pursuant to a dissolution decree. Section 518.17, subdivision 4, is taken verbatim from section 309 of the Uniform Marriage and Divorce Act, 9A U.L.A. 167 (1979), and section 102 of the Act states that the provisions of the uniform law should be "liberally construed" to promote its underlying purposes, one of which is to "make reasonable provision for spouse and minor children during and after litigation." 9A U.L.A. 98.

■ The trial court, in effect, considered the property settlement payments Patricia receives pursuant to the dissolution decree. The court found:

> That respondent [Patricia] receives $950 per month pursuant to the decree of dissolution entered May 3, 1982, and that said payment is part of a property settlement and not maintenance or support; and that respondent attends college and is unemployed at this time and has no source of income.

The court then concluded:

> That respondent has no income from which to pay support for the minor children of the parties herein; that the $950 per month respondent receives as property settlement is necessary for respondent to maintain herself and meet her obligations acquired prior to the dissolution of the marriage of the parties herein and said sum is unavailable for payment of child support payments.

Because the trial court properly considered the payments a financial resource available for child support, its determination was not a clear abuse of discretion. We therefore reverse the court of appeals on this issue, and reinstate the judgment of the trial court.

Affirmed in part; reversed in part.