STATE OF MINNESOTA

IN SUPREME COURT

A23-0522

Court of Appeals                                                    Procaccini, J.
                                                        Took no part, Gaïtas, J.

Leslie E. Sheehy Lee,

                     Appellant,

vs.                                                             Filed: April 9, 2025
                                                        Office of Appellate Courts

Travis W. Kalis,

                     Respondent,

County of Le Sueur,

                     Respondent.

_____

Michael D. Dittberner, Dittberner Family Law, Ltd., Edina, Minnesota; and

Tami L. Peterson, Saxton Peterson Law Firm, Mankato, Minnesota, for appellant.

Jacob M. Birkholz, Birkholz & Associates, LLC, Mankato, Minnesota, for respondent Travis W. Kalis.

Keith Ellison, Attorney General, Jacqueline Clayton, R.J. Detrick, Assistant Attorneys General, Saint Paul, Minnesota, for amicus curiae Minnesota Department of Human Services.

Robert Small, Executive Director, Minnesota County Attorneys Association, Saint Paul, Minnesota; and

Benjamin G. A. Olson, Assistant Anoka County Attorney, Anoka, Minnesota, for amicus curiae Minnesota County Attorneys Association.

m boulette, Seungwon R. Chung, Taft Stettinius & Hollister LLP, Minneapolis, Minnesota;

1

Joani C. Moberg, Henschel Moberg, P.A., Minneapolis, Minnesota;

Timothy D. Lees, Lees Family Law, Ltd., Edina, Minnesota;

Elizabeth L. Juelich, Krueger, Juelich & Schmisek, PLLC, Minnetonka, Minnesota; and

Mary C. Lauhead, Law Offices of Mary Cathrine Lauhead, Saint Paul, Minnesota, for amici curiae Minnesota State Bar Association, Family Law Section and Minnesota Chapter of the American Academy of Matrimonial Lawyers.

_____

SYLLABUS

1.      Extrajudicial agreements to modify child support orders are invalid as a matter of law.

2.      Minnesota Statutes section 518A.39, subdivision 2(*l*) (2024), applies only to subsequent child support orders issued by the court and not to extrajudicial modifications of child support obligations.

Reversed and remanded.

OPINION

PROCACCINI, Justice.

This case involves the validity of a private, extrajudicial agreement to lower the amount of court-ordered child support that a father owed to the mother of his children. A child support order required respondent Travis W. Kalis to pay appellant Leslie E. Sheehy Lee monthly child support for their two children. Later, Kalis and Sheehy Lee discussed entering into a private agreement to lower Kalis's child support obligation. The parties did not execute a written agreement, but Sheehy Lee began requesting payments from Kalis each month—in an amount less than the amount established by the court order. Several

2

years later, after Kalis stopped sending prompt payments, Sheehy Lee sought enforcement of the court order through the county child support agency. The county notified Kalis that, based on his obligations set by the child support order, he owed Sheehy Lee more than $30,000. Kalis moved to modify the child support order and requested forgiveness of the arrearages. A child support magistrate concluded that the parties had reached an agreement modifying Kalis's child support obligation and determined that Kalis did not owe Sheehy Lee any arrearages.

Sheehy Lee sought review of the child support magistrate's order in the district court, arguing that the forgiveness of Kalis's arrearages was an impermissible retroactive modification of the child support order under Minnesota Statutes section 518A.39, subdivision 2(f) (2024). The district court declined to grant Sheehy Lee relief. Sheehy Lee appealed, and the court of appeals concluded that the parties had reached a fair and reasonable agreement and affirmed the lower court's decision to forgive Kalis's arrearages. Because extrajudicial agreements to modify a child support order are invalid and courts have only limited authority to modify a child support order retroactively, we reverse the decision of the court of appeals and remand for further proceedings.

**FACTS**

Appellant Leslie E. Sheehy Lee and respondent Travis W. Kalis have two children. In 2013, the district court ordered Kalis to pay $1,145 per month in child support (the

3

2013 Order).[1]  At the time, the Le Sueur County Child Support Office was providing child support enforcement and collection services—commonly known as "IV-D" services[2]—to enforce the 2013 Order.  In 2014, Kalis began requesting that Sheehy Lee close her IV-D case with the county.  In 2015, Sheehy Lee closed her IV-D case with the county.  This meant that the county was no longer collecting and enforcing Kalis's child support obligations as established by the 2013 Order.  Also in 2015, the parties communicated about Kalis paying less in child support in exchange for visiting the children more often.  Kalis sent Sheehy Lee a draft written agreement that called for him to pay $1,000 per month in child support but also to take on other responsibilities, including visiting the children more often, in exchange for Sheehy Lee requesting that the district court "remove" the child support order.  Sheehy Lee responded with a draft agreement that called for Kalis to pay $1,260 in monthly child support.  The parties later testified that they never reached a written agreement signed by both parties.

---

[1]     The district court also ordered Sheehy Lee to contribute $43 per month towards medical support because Kalis was responsible for providing health care coverage for the children.  *See* Minn. Stat. § 518A.41, subd 5(a) (2024).  This reduced the amount Kalis owed in child support each month by $43.  Minn. Stat. § 518A.41, subd. 5(b).  And, in 2015, Kalis's child support obligation increased to $1,182 per month due to a cost-of-living adjustment.  *See* Minn. Stat. § 518A.75 (2024) (providing for biennial cost-of-living adjustments to child support orders).

[2]     A "IV-D case" is any proceeding where a party has either assigned to the State the right to receive support because of the receipt of public assistance, or where a party has applied for child support services under Title IV-D of the Social Security Act, 42 U.S.C. § 654(4).  *See* Minn. Stat. § 518A.26, subd. 10 (2024); Minn. R. Gen. Prac. 352.01(g).  IV-D cases use an expedited child support process and involve child support magistrates.  Minn. R. Gen. Prac. 353.01, subd. 1.

Beginning in November 2015, Kalis began making payments of $1,000 by Venmo—a mobile payment service. Each month, Sheehy Lee sent Kalis a request for $1,000 via Venmo, and Kalis would then transfer the requested amount. These $1,000 payments continued through May 2019. In June 2019, Sheehy Lee began requesting, and Kalis began paying, only $500 per month. This lasted until April 2022, when Kalis stopped making prompt payments. A few months later, the county reopened the IV-D case, after Sheehy Lee applied for IV-D services to collect on arrearages.[3]

The county notified Kalis that he owed Sheehy Lee over $30,000. Most of this amount was attributable to Kalis having reduced his monthly child support payments to $500 between June 2019 and March of 2022. But Kalis also owed Sheehy Lee for the months when he reduced his monthly child support payments to $1,000. In September 2022, Kalis filed a motion in district court asking the court to modify child support both prospectively and retroactively. Specifically, Kalis asked the court to modify his ongoing basic child support and medical support obligations and "[f]urther modify[] and retroactively satisfy[]" the arrearages. Kalis asserted that the court should forgive his arrearages based on waiver, equitable estoppel, and "other equitable principles in law, including laches."

A child support magistrate (CSM) held an evidentiary hearing and concluded that the parties had reached an extrajudicial agreement to limit Kalis's monthly obligation to

---

[3] Although Kalis's brief makes conflicting assertions about this topic, the record makes clear that Sheehy Lee received "nonpublic assistance" child support services, making this a IV-D case. *See* Minn. Stat. § 518A.26, subd. 10. That said, the fact that this is a IV-D case does not influence our analysis of the issues presented in this appeal.

5

$1,000 until June 2019 and to $500 thereafter. But the CSM also found that the parties had abandoned that agreement when Kalis failed to pay Sheehy Lee's April request and that "[t]he agreement of the parties did not modify the prior court order but does limit what [Kalis] has to pay for past support based on their mutual agreement." The CSM concluded that Kalis did not owe Sheehy Lee any arrearages for the difference between his child support obligation set by the 2013 Order and what he actually paid Sheehy Lee. As to Kalis's request for a prospective modification, the CSM concluded that there was no basis to modify the 2013 Order.[4]

Sheehy Lee sought review of the CSM's order, arguing that the CSM's conclusion that Kalis did not owe any arrearages had the same effect as modifying the 2013 Order, retroactively changing the monthly amount owed by Kalis to Sheehy Lee. And because Kalis did not serve his motion to modify until September 30, 2022, and the CSM's modification of the 2013 Order had the effect of excusing the failure to pay child support before that date, Sheehy Lee argued that the CSM's retroactive modification of the 2013 Order violated Minnesota Statutes 518A.39, subdivision 2(f). *See* Minn. Stat. § 518A.39, subd. 2(f) (stating that a court's modification of a prior child support order may be retroactive only, at the earliest, to the date of service of notice of the motion to modify). The district court declined to grant Sheehy Lee relief, concluding that the CSM had correctly determined that the parties agreed to reduce Kalis's child support obligation based on the parties' Venmo transactions. *See* Minn. R. Gen. Prac. 377.09, subd. 2(b).

---

[4]     Neither party appealed this portion of the CSM's order.

Sheehy Lee appealed, and the court of appeals affirmed. *Lee v. Kalis*, No. A23-0522, 2024 WL 1154155, at *6 (Minn. App. Mar. 18, 2024). The court of appeals relied on the parties' conduct as evidence of an implied-in-fact contract that effectively altered the parties' obligations, even though no motion to modify the child support order was pending. *Id.* at *3–4. Applying a two-part framework set forth in *Kielley v. Kielley*, 674 N.W.2d 770, 778–79 (Minn. App. 2004), the court of appeals first concluded that the district court did not err in determining that there was an implied-in-fact contract between the parties. The court of appeals then reasoned that, although the district court did not make explicit findings on whether the parties' agreement was fair and reasonable to all interested parties, it could determine from the record that the parties' extrajudicial agreement was fair and reasonable under factors set out in *Kielley*.

We granted Sheehy Lee's petition for further review.

## ANALYSIS

This case requires us to decide whether a court can forgive amounts owed under a child support order based on an extrajudicial agreement,[5] when such forgiveness violates the statutory prohibition on retroactive modifications of child support orders. *See* Minn. Stat. § 518A.39, subd. 2(f). To answer that question, we must also decide whether a

---

[5] As used in this opinion, an extrajudicial agreement is an agreement reached and acted upon without court approval. *See Extrajudicial*, *Black's Law Dictionary* 728 (12th ed. 2024) (defining extrajudicial as "[o]utside court; outside the functioning of the court system"). The parties dispute whether Sheehy Lee and Kalis ever executed a contractually valid agreement. Because we conclude that an extrajudicial agreement to modify a child support order is invalid as a matter of law, we need not decide whether the parties reached a contractually valid agreement—written or otherwise.

7

statutory exception that allows a court to adopt "an alternative effective date" for a child support order is applicable to the scenario presented in this case. *See* Minn. Stat. § 518A.39, subd. 2(*l*) (2024). These are questions of law that we review de novo. *Butt v. Schmidt*, 747 N.W.2d 566, 574 (Minn. 2008).

I.

We first consider whether, and under what circumstances, a court may give retroactive effect to an extrajudicial agreement that purports to modify a child support order. Stated another way, we must decide whether extrajudicial agreements to modify child support orders are valid and enforceable or if child support orders may be modified only by a court, subject to the limits in section 518A.39, subdivision 2(f). Our prior case law controls and compels our conclusion that extrajudicial agreements to modify a child support order are invalid. This case law—as well as the public policy that supports it—is best understood in light of the relevant statutory scheme, which is where we begin our analysis.

Minnesota Statutes section 518A.39, subdivision 2(f), establishes that a court's modification of a prior child support order may be retroactive only, at the earliest, to the date of service of notice of the motion to modify. The history behind section 518A.39, subdivision 2(f), offers helpful context to the arguments presented. A federal law passed in 1986—commonly known as the "Bradley Amendment"—conditioned states' receipt of federal funding on the states' enactment of laws prohibiting retroactive modification of

8

child support.[6] *See* Bradley Amendment, Pub. L. No. 99-509, § 9103, 100 Stat. 1874, 1973 (1986) (codified at 42 U.S.C. § 666(a)(9)). Congress passed the Bradley Amendment, in part, to provide greater protection for children's interests. In particular, Congress sought to address concerns about state laws and practices that permitted modification of child support awards and had the effect of reducing the amount of child support ordered, contrary to the interests of children. *See* Prohibition of Retroactive Modification of Child Support Arrearages, 54 Fed. Reg. 15,757, 15,758–15,762 (Apr. 19, 1989). In 1987, the Minnesota Legislature amended Minnesota law to comply with the Bradley Amendment.[7] *See* Act of June 12, 1987, ch. 403, art. 3, § 90, 1987 Minn. Laws 3255, 3449 (codified as amended at Minn. Stat. § 518A.39, subd. 2(f)).

Under the Minnesota laws passed in response to the Bradley Amendment, courts have limited authority to modify a child support order retroactively. A modification "may be made retroactive only with respect to any period during which the petitioning party has pending a motion for modification but only from the date of service of notice of the motion on the responding party." Minn. Stat. § 518A.39, subd. 2(f). "In other words, any modification of support—for whatever underlying reason—may be retroactive only, at the

---

[6]     Federal funding accounts for two-thirds of the cost of operating Minnesota's child support program. *See* 42 U.S.C. § 655(a)(2)(C) (providing that states with approved plans are reimbursed by the federal government for 66 percent of the costs of operating their child support enforcement programs).

[7]     The Bradley Amendment also required participating states to enact laws establishing that any required child support payment, on or after the day it is due, is a judgment by operation of law and entitled as a judgment to full faith and credit. *See* 42 U.S.C. § 666(a)(9)(B); Act of Apr. 21, 1988, ch. 593, § 11, 1988 Minn. Laws 642, 646 (codified as amended at Minn. Stat. § 548.091, subd. 1a (2024)).

earliest, to the date of service of notice of the motion to modify." *In re Dakota Cnty.*, 866 N.W.2d 905, 910 (Minn. 2015). We have reiterated that the language prohibiting retroactive modifications now found in subdivision 2(f) is "clear and unambiguous." *Id.* at 912.

Kalis argues that the forgiveness of his child support arrearages did not amount to a retroactive modification because the parties reached a valid extrajudicial agreement to modify the child support order in 2015, which the court could later ratify. Sheehy Lee argues that the CSM's order is an impermissible retroactive modification of the 2013 Order and that extrajudicial agreements are per se invalid and cannot be used to modify a child support order. Both parties' arguments rely heavily on case law of this court and the court of appeals. Sheehy Lee relies on *Dent v. Casaga*, 208 N.W.2d 734 (Minn. 1973), and *Tell v. Tell* (*Tell I*), 359 N.W.2d 298 (Minn. App. 1984), to support her argument that extrajudicial modifications of support orders are invalid. She argues, in effect, that our statement in *Dent*—that court-ordered support in a dissolution decree is "entitled to enforcement as originally entered" unless it is modified in a court order—means that any agreement that would alter the obligations under a support order cannot be entitled to enforcement. 208 N.W.2d at 737. By contrast, Kalis relies on *Dent* and a footnote in *Tell v. Tell* (*Tell II*), 383 N.W.2d 678 (Minn. 1986), to support his argument that extrajudicial agreements are valid and enforceable, if they are subsequently approved by the court. He also argues, as the court of appeals concluded, that the parties' agreement here is worthy of enforcement under standards set forth in *Kielley*. 674 N.W.2d at 778–79.

10

Our decision in *Dent* compels our conclusion here that an extrajudicial agreement that purports to modify child support before the effective dates authorized in Minnesota Statutes 518A.39, subdivision 2(f), runs afoul of that statute and is therefore prohibited. In *Dent*, we held that "a judgment of divorce providing for support payments in the future is a final judgment" and that "until . . . modification has been ordered, the decree is entitled to enforcement as originally entered." 208 N.W.2d at 737.

Our later decisions in *Tell* did not alter our holding in *Dent.* In *Tell I*, the court of appeals, citing *Dent,* held that "[e]xtra-judicial modifications of dissolution decrees without subsequent judicial approval are not valid." 359 N.W.2d at 301. And because "[n]o judicial modification of . . . support occurred" until the court had entered an order to that effect, "the trial court did not err in assessing arrearages based on the provisions of the decree." *Id.*

To the extent that the principle announced in *Dent* was brought into question by our decision in *Tell II*, we take this opportunity to clarify. *Dent* means what it says: A support order is entitled to enforcement until modification has been ordered by a court. *Dent*, 208 N.W.2d at 737. *Tell II* did not change that clear principle. In *Tell II*, we affirmed the court of appeals in relevant part—holding that because no judicial modification of support had occurred, the district court did not err when it assessed arrearages based on the original support order. *Tell II*, 383 N.W.2d at 682. In doing so, we restated the holding from *Dent* that "until . . . modification has been ordered, the decree is entitled to enforcement as originally entered." *Id.* (quoting *Dent*, 208 N.W.2d at 737). But we reasoned that "[t]he court of appeals need not have determined in this case the status of extrajudicial

11

modifications of dissolution decrees in light of our decision in *Dent*" because the district court specifically found that "the original decree was never extrajudicially modified." *Id.* And, in a footnote, we stated that "private agreements between parents with respect to family living arrangements should be encouraged" and that "the strong wording of the court of appeals that '[e]xtrajudicial modifications of dissolution decrees without subsequent judicial approval are *not valid*' is subject to misinterpretation and contrary to this encouraged policy." *Id.* at 682 n.2 (emphasis added in *Tell II*).

We reject Kalis's argument that the discussion in *Tell II*, including the footnote, somehow authorizes private agreements between parties that would violate the relevant statutes. If we were to adopt Kalis's analysis, parties could modify child support orders and then, later, ask the court to accept that modification and apply it retroactively to arrearages. This violates section 518A.39, subdivision 2(f).[8] Three other reasons rebut

---

[8] Two other statutes, Minnesota Statutes section 518A.43 (2024) and Minnesota Statutes section 518A.37 (2024), further reinforce our conclusion that Kalis's argument is inconsistent with the law. Section 518A.43 addresses deviations from the child support guidelines and requires that the district court consider a list of factors when modifying child support or deciding to deviate from the presumptive child support obligation. Minn. Stat. § 518A.43, subd. 1 (stating that "the court *must* take into consideration the following factors" and listing factors (emphasis added)); *see also* Minn. Stat. § 518A.35 (2024) (establishing the child support guidelines that "shall be used" to calculate the presumptive child support obligation for each parent). And section 518A.37 requires the district court to make certain written findings in every case—including in instances where the parties have entered into a written agreement—irrespective of whether the court has deviated from the presumptive child support obligation. *See* Minn. Stat. § 518A.37, subds. 1, 2 (stating that "the court *must* make written findings" (emphasis added)). The rules of statutory interpretation command that " '[m]ust' is mandatory," meaning that the court's participation in these proceedings is not optional. *See* Minn. Stat. § 645.44, subd. 15(a) (2024) (defining "must" as "mandatory"); *Spann v. Minneapolis City Council,* 979 N.W.2d 66, 74 (Minn. 2022) ("When interpreting statutes, must is mandatory." (citation omitted)

12

Kalis's interpretation of *Tell II*. First, the footnote in *Tell II* is dicta, because it was not essential to the court's holding.[9] Second, as Sheehy Lee argues, the *Tell II* footnote was about family living arrangements—not child support. We decided *Tell II* before the Minnesota Legislature amended the law related to child support to comply with the Bradley Amendment. *Compare Tell II*, 383 N.W.2d at 683, *with* Act of June 12, 1987, ch. 403, art. 3, § 90, 1987 Minn. Laws 3255, 3449 (codified as amended at Minn. Stat. § 518A.39, subd. 2(f)). In making this amendment, the Legislature made clear that forgiveness of child support arrearages through a retroactive modification of a child support award is not permissible. Third, since *Tell II*, we have reaffirmed that our statement in *Dent* is still good law: In 2015, we cited *Dent* for the proposition that a child support "order [is] fully enforceable until modified *by a court upon motion*." *Dakota Cnty.*, 866 N.W.2d at 912 (emphasis added) (citing *Dent*, 208 N.W.2d at 737). Extrajudicial agreements to modify child support orders are invalid; courts, not the parties, *may* modify an existing child

_____

(internal quotation marks omitted)); *see also Pooley v. Pooley*, 979 N.W.2d 867, 874 (Minn. 2022) ("The rules of statutory interpretation command that shall is mandatory, meaning that the court's participation in effectuating such property divisions is not optional." (citation omitted) (internal quotation marks omitted)). Taken together, these statutes demonstrate the role of the district court in setting and modifying child support orders. The statutory language also refutes any notion that parties can enter into an agreement to modify a child support order without court involvement, because doing so would necessarily prevent the court from performing these statutorily mandated duties.

9       " 'Dicta,' or more properly 'obiter dicta,' generally is considered to be expressions in a court's opinion which go beyond the facts before the court and therefore are the individual views of the author of the opinion and not binding in subsequent cases." *State ex rel. Foster v. Naftalin*, 74 N.W.2d 249, 266 (Minn. 1956).

support order, but the courts' authority is subject to the limitations in section 518A.39, subdivision 2(f).

We also reject Kalis's contention that *Kielley v. Kielley*, the linchpin of the court of appeals' affirmance here, requires a different result. 674 N.W.2d at 778–79. In *Kielley*, the court of appeals established a framework to determine the enforceability of an extrajudicial agreement with respect to spousal maintenance and parenting time. *Id.* Although *Kielley* did not involve a child support order, the court of appeals in this case relied on the four-factor framework set forth in *Kielley* to conclude that the parties' extrajudicial child support agreement was enforceable because it was fair and reasonable. *Lee*, 2024 WL 1154155, at *5. But the court in *Kielley* specifically differentiated between spousal maintenance and child support, noting that stipulations should be "given considerably less force in contexts where the stipulation in question may have an impact on a child." 674 N.W.2d at 776. *Kielley* is of course not binding on this court. But even if it were, it would not apply here. Child support was not at issue in *Kielley*, and the court in *Kielley* emphasized the different considerations that apply in the unique context of child support. *See id.* *Kielley* does not apply to the issues before us. Most importantly, the application of *Kielley* to extrajudicial modifications of child support orders would conflict with the requirements of Minnesota Statues section 518A.39, subdivision 2(f).

Finally, the public policy embodied in the relevant statutes and case law also supports our conclusion that extrajudicial agreements to modify child support orders are invalid. We have long held that the best interests of the child are the paramount consideration in child support cases, and extrajudicial agreements to modify child support

14

do not necessarily align with the child's best interests—especially because the child is not a party to the agreement. *See*, *e.g.*, Minn. Stat. § 518A.37, subd. 2(5) (2024) (stating that any deviation from the presumptive child support obligation established by section 518A.34 must serve "the best interests of the child"); *Tammen v. Tammen*, 182 N.W.2d 840, 842 (Minn. 1970) ("Courts will not be bound by an agreement between parents affecting the rights of minor children with respect to support, but will be controlled by the welfare of the child as the paramount consideration."); *see also Kaiser v. Kaiser*, 186 N.W.2d 678, 683 (Minn. 1971) ("Child support requirements, relating as they do to the nonbargainable interests of the children, are less subject to restraint by stipulation.").

Our decisions have consistently emphasized this paramount policy consideration. *See, e.g.*, *Olson v. Olson*, 534 N.W.2d 547, 549 (Minn. 1995) ("As in all matters involving court-established family relationships of children, we begin with reference to our paramount commitment to the best interests of the children."); *State ex rel. Flint v. Flint*, 65 N.W. 272, 273 (Minn. 1895) (observing that a child's best interests outweigh the interests of a parent). And we have stressed that the welfare of the child takes precedence even if the case involves a stipulation. *Petersen v. Petersen*, 206 N.W.2d 658, 659 (Minn. 1973).

We also share the concerns raised by the Minnesota Department of Human Services (DHS) in its amicus brief. Allowing extrajudicial modifications of child support orders leaves room for abuses caused by power imbalances between parties. Our State has an interest in preventing such abuses and ensuring that children have the resources they need. *Putz v. Putz*, 645 N.W.2d 343, 352 (Minn. 2002) (noting the "strong state policy of assuring

15

that children have the adequate and timely economic support of their parents" (citation omitted) (internal quotation marks omitted)).  Recently, in *Pooley v. Pooley*, we noted that agreements in dissolution proceedings, where the relevant statutes similarly mandate the courts' participation, are not simply contracts between two private parties; instead, the State of Minnesota "sits as a third party"—through the involvement of its courts—to ensure that agreements are fair and equitable.  979 N.W.2d 867, 874 (Minn. 2022); *see also Gully v. Gully*, 599 N.W.2d 814, 823 (Minn. 1999) ("In cases involving child support obligations, the court plays a unique role in that it sits as a third party, representing all of the citizens of the state of Minnesota to see that children benefit from the income of their parents.").  In line with this reasoning, we must also ensure that the State, through the district court, effectively sits as a third party in child support proceedings to ensure that the support awarded is fair and equitable as established by the Legislature in the child support guidelines.  Minn. Stat. § 518A.35 (2024).  Allowing extrajudicial modifications of child support awards would run contrary to this policy.[10]

In sum, based on our holding in *Dent*—considered along with the relevant statutory provisions adopted by the Legislature and consistent with considerations of public policy—we conclude that extrajudicial agreements to modify a child support order are

---

[10]    And we share in DHS's concern that a holding allowing for the forgiveness of arrearages under the circumstances presented here might be deemed contrary to the State's federally approved plan, causing Minnesota to lose funding for its child support program. *See* 42 U.S.C. § 655(a)(2)(C) (providing that the federal government will reimburse states for 66 percent of the costs of operating their approved child support enforcement plan); *see also* 42 U.S.C. § 654 (setting forth state plan requirements).

16

invalid. Child support orders may be modified only by a court, and then only within the limits of section 518A.39, subdivision 2(f).

## II.

Kalis argues that even if the parties' extrajudicial agreement to modify the 2013 Order is invalid, the CSM's forgiveness of his arrearages is not an impermissible retroactive modification of the 2013 child support order because the parties agreed upon an alternative effective date through their payment system on Venmo. *See* Minn. Stat. § 518A.39, subds. 2(f), 2(*l*).

A court's adoption of an alternative effective date for a child support order is not considered a retroactive modification of support. *Id.*, subd. 2(f). "[A] court *may* select an alternative effective date *for a support order* if the parties enter into a binding agreement for an alternative effective date." *Id.*, subd. 2(*l*) (emphasis added). "Support order" is defined by statute as "a judgment, decree, or order, whether temporary, final, or subject to modification, issued by a court or administrative agency of competent jurisdiction." Minn. Stat. § 518A.26, subd. 21(a) (2024). The plain language of the statute makes clear that parties may enter into a binding agreement for an alternative effective date for a subsequent order issued by the court or agency. The plain language of the statute does not, however, allow parties to shoehorn an agreement modifying a prior child support order into an agreement for an alternative effective date without seeking the issuance of an order from the court. Adopting Kalis's interpretation of the exception in subdivision 2(*l*) would result in the exception swallowing the general rule prohibiting retroactive modification of a child support order.

17

The permissive language of the statute reinforces this conclusion. As discussed above, subdivision 2(*l*) states that "[a] court *may* select an alternative effective date for a support order if the parties enter into a binding agreement for an alternative effective date." Minn. Stat. § 518A.39, subd. 2(*l*) (emphasis added); *see* Minn. Stat. § 645.44, subd. 15 (establishing that " '[m]ay' is permissive"). The Legislature's use of the permissive "may" establishes that any agreement for an alternative effective date is subject to the discretion and approval of the court. In other words, when parties agree to an alternative effective date for a child support order, the court must still approve that agreement before it becomes effective. For these reasons, Minnesota Statutes section 518A.39, subdivision 2(*l*), does not apply to the circumstances here.[11]

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court for proceedings consistent with this opinion.

Reversed and remanded.

GAÏTAS, J., took no part in the consideration or decision of this case.

---

[11] Because we conclude that the forgiveness of Kalis's arrearages was impermissible under Minnesota Statutes section 518A.39, subdivision 2(f), we must also reject Kalis's arguments that forgiveness of his arrearages was permitted under equitable principles. "[E]quity follows the law, and we may not disregard statutory law or grant relief prohibited thereby." *Dakota Cnty.*, 866 N.W.2d at 914 (citation omitted) (internal quotation marks omitted). In other words, equity cannot be used to circumvent the statutory limits on the courts' authority to modify child support awards. *See Putz*, 645 N.W.2d at 347 (noting that the district court's discretion to order modifications to child support orders "must be exercised within the limits set by the legislature").